## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRIS CALDERON<br><br>*Plaintiff,*<br><br>v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY and<br>TOM DUONG, *individually*<br><br>*Defendants.* | CASE NO.:<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Iris Calderon ("Plaintiff" or "Ms. Calderon"), by and through undersigned counsel, files this Complaint against The Trustees of Columbia University in the City of New York ("Columbia" or "the University") and Tom Duong ("Mr. Duong") (collectively, "Defendants"), to redress violations of federal and state law arising from Defendants' discrimination, retaliation, and failure to accommodate in the workplace.

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"); and the New York Labor Law § 215. Plaintiff also brings related New York common-law tort claims. Plaintiff

1

seeks compensatory damages, punitive damages, equitable relief, attorneys' fees, costs, and all other appropriate relief to remedy Defendants' unlawful conduct.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act, and the Age Discrimination in Employment Act.

2.      This Court has supplemental jurisdiction over Plaintiff's claims brought under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.*; the New York Labor Law § 215; and related New York common-law tort claims pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as the federal causes of action.

3.      This Court has personal jurisdiction over The Trustees of Columbia University in the City of New York, which maintains its principal place of business at 116th Street and Broadway, New York, New York 10027, within this judicial district, and conducts continuous and systematic business operations in the State of New York.

4.      This Court has personal jurisdiction over Tom Duong, who at all relevant times was employed by Columbia University in New York County, exercised supervisory authority over Plaintiff, and engaged in the discriminatory and retaliatory acts giving rise to this action within this District.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in New York County, where Plaintiff worked and where Defendants maintain their principal places of business.

2

## PARTIES

6.     Plaintiff, Iris Calderon ("Ms. Calderon" or "Plaintiff") is an individual residing in New York, New York. Ms. Calderon is a 51-year-old Latina woman who, at all times relevant to this action, was employed by The Trustees of Columbia University in the City of New York within the Facilities and Operations Department. She is a qualified individual with disabilities, including Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy, which substantially limits her ability to perform manual work functions.

7.     Defendant, The Trustees of Columbia University in the City of New York ("Columbia" or "the University") is a private, not-for-profit educational corporation organized under the laws of the State of New York, with its principal administrative offices located at 116th Street and Broadway, New York, New York 10027. Columbia is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(b); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(5)(A); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 630(b); the New York State Human Rights Law, N.Y. Exec. Law § 292(5); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-102(5).

8.     Defendant Tom Duong ("Mr. Duong") is an individual employed by Columbia University as a supervisor in the Facilities and Operations Department. At all times relevant to this action, Mr. Duong exercised supervisory and managerial authority over Ms. Calderon and directly participated in the discriminatory, retaliatory, and harassing conduct described in this

## ADMINISTRATIVE EXHAUSTION

9.     Section 1981 does not require Plaintiff to exhaust any administrative remedies before filing this Complaint in federal court.

10.     On August 17, 2023, Plaintiff filed her first charge of discrimination and retaliation with the New York State Division of Human Rights ("NYSDHR"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC") pursuant to the agencies' work-sharing agreement (NYSDHR Case No. 10228226; EEOC Charge No. 16GC305506).

11.     Plaintiff subsequently filed a second charge of discrimination and retaliation with the NYSDHR on or about December 29, 2023, which was likewise dual-filed with the EEOC (NYSDHR Case No. 10232704; EEOC Charge No. 16GC402038).

12.     Plaintiff's administrative complaint alleged discrimination and retaliation based on race**,** color**,** national origin, age, and disability, as well as failure to accommodate and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Age Discrimination in Employment Act of 1967.

13.     The EEOC's issuance of Plaintiff's Notice of Right to Sue ("NTRS") has been delayed due to the ongoing federal government shutdown. Plaintiff has timely requested her NTRS and will promptly supplement this Complaint upon receipt once EEOC operations resume and the NTRS is issued.

14.     Neither the New York State Human Rights Law ("NYSHRL") nor the New York City Human Rights Law ("NYCHRL") require exhaustion of administrative remedies prior to filing a civil action. *See Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997) (holding that "the NYSHRL contains no requirement of exhaustion of administrative remedies"); *Hernandez v. N.Y.C. Law Dep't Corp. Counsel*, No. 94 Civ. 9042 (CSH), 1997 U.S. Dist. LEXIS 620, at *29 (S.D.N.Y. Jan. 23, 1997) "Unlike Title VII, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies."

## FACTUAL ALLEGATIONS

Plaintiff's Background and Strong Work Record

15.     Plaintiff Iris Calderon is a Latina woman, age 53, employed by The Trustees of Columbia University in the City of New York ("Columbia") since 2008 as a Facilities Services Coordinator within the Facilities and Operations Department.

16.     Throughout her tenure, Plaintiff was known as a diligent and detail-oriented employee who provided consistent administrative and technical support for the department's maintenance operations and union-related functions. Her strong work performance was recognized when she was promoted to Lead Facilities Services Coordinator in 2019, a role reflecting her reliability, institutional knowledge, and leadership within the Facilities Management team. Her years of service earned her the respect of peers until she began to assert her rights under the law, after which she experienced escalating hostility and marginalization.

17.     Plaintiff is a qualified individual with Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy, conditions that substantially limit manual tasks including typing and mousing. Her disabilities were documented through medical evaluations following years of repetitive strain in her hands and wrists caused by data entry and facilities management work. Columbia was aware of her disabilities as early as July 2021 and again following her 2023 wrist surgery.

18.     Until the events described below, Plaintiff performed her duties satisfactorily and had no material discipline. In fact, her performance reviews consistently reflected reliability and strong institutional knowledge, and she regularly trained newer employees on internal systems. Columbia's later efforts to paint her as "difficult" or "irrational" only began after she requested disability accommodations and reported discrimination, showing clear pretext.

Initial Discrimination and Technological Issues

19.    Beginning in 2022, Ms. Calderon began experiencing a series of ongoing technological issues that gradually revealed a broader pattern of dismissive treatment by Columbia University. What initially seemed to be routine IT difficulties developed into repeated instances where her concerns were minimized or disregarded. Over time, the University's responses reflected a lack of sensitivity toward Ms. Calderon's physical limitations and an emerging pattern of bias connected to her age and disability. These experiences marked the start of a period in which Ms. Calderon's workplace interactions became increasingly strained and inequitable.

20.    In July 2022, while working remotely, Plaintiff's university-issued laptop displayed an "administrator access" notice including an unfamiliar Columbia UNI.[1] She reasonably believed an unauthorized user had accessed the device and promptly notified Assistant Director of IT, Lamaka Opa ("Mr. Opa"), and her manager at the time, Fred Small ("Mr. Small"). Rather than investigate her concern in good faith, IT personnel dismissed her inquiry as "user confusion." This marked the beginning of a pattern in which Plaintiff's technical difficulties—closely connected to her physical limitations from Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy—were trivialized or attributed to incompetence.

21.    On or about August 1, 2022, Plaintiff experienced repeated login failures and application malfunctions that prevented her from completing normal work tasks, and required her to return to campus for reinstalls. The University's remote access system (VPN) consistently failed to connect, forcing Plaintiff to rely on her personal Wi-Fi network to perform her job duties from home. The continuous malfunctions caused her to spend extended time navigating error screens

---

[1] The University Network ID ("UNI") is a unique identifier assigned to each Columbia University student, faculty member, researcher, or administrator, consisting of a combination of initials and numbers. The appearance of an unfamiliar UNI on Plaintiff's work laptop indicated potential unauthorized access and should not have occurred absent IT authorization.

and system restarts, which in turn aggravated her Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy by increasing the amount of typing and manual coordination required to troubleshoot the issues. These issues interfered with her ability to perform essential functions and caused unnecessary stress.[2]

22.    In September 2022, Plaintiff was informed by Human Resources and Information Technology that she would receive a new laptop directly from the manufacturer, and still in the manufacturer's box. However, instead of being provided a standard replacement, the laptop was first taken to Columbia's Department of Public Safety, where it was registered and labeled without Plaintiff's knowledge or consent. The device bore a "Public Safety" sticker—typically reserved for security-controlled equipment—causing Plaintiff concern that her communications and activity were being monitored. Public Safety operates its own IT division that reports directly to Facilities Management, further heightening Plaintiff's concern. When she raised the issue, supervisors laughed and implied she was being paranoid.

23.    Furthermore, the replacement device overheated and emitted abnormal fan noise, aggravating Plaintiff's hand and wrist pain and limiting her ability to type for extended periods. Plaintiff reported the overheating to Human Resources and Information Technology, explaining that the heat triggered pain and numbness related to her Carpal Tunnel condition and that she feared further deterioration could prevent her from being able to work and support herself. HR failed to respond or take corrective action. The lack of response from HR reflected a disregard for Plaintiff's documented disability and an ongoing pattern of indifference to her accommodation needs.

---

[2] Upon information and belief, none of Plaintiff's colleagues experienced comparable technical problems during this period. The occurrence of repeated malfunctions within such a short timeframe appeared unusual and caused Plaintiff reasonable concern that these issues were not purely accidental, but instead reflected a lack of responsiveness to her concerns and wellbeing.

24. Despite her repeated requests for assistance, Plaintiff's concerns continued to be dismissed as "user error" or routine behavior, and no meaningful investigation was conducted. This pattern of indifference reinforced the perception that Columbia undervalued her as an older, disabled employee and did not take her difficulties seriously.

25. On March 5, 2023, Plaintiff's work applications suddenly stopped functioning midday. Plaintiff immediately contacted IT and simultaneously filed a grievance regarding the persistent technical failures that were interfering with her ability to work. The next morning, she was instructed to scan a QR code on her laptop; within hours, she lost connectivity across multiple personal and work devices in her home. When she reported this alarming event, management casually replied that "everything seems fine on our end" and refused to document the incident. This lack of transparency—occurring in the context of a pending grievance—deepened Plaintiff's distress and reinforced her belief that Columbia was unwilling to take her technical challenges seriously.

26. A few days later, on March 9, 2023—immediately before a scheduled step-three union grievance— while waiting in the union office to prepare for the hearing and connected to Columbia University's Wi-Fi network, Plaintiff discovered that photos on her phone had been mirrored and certain images erased. The incident heightened her concern that her devices were being accessed without authorization. Plaintiff immediately informed her union representatives before the meeting, but the issue was never addressed or discussed during the hearing. Instead of investigating or offering support, HR and supervisory staff implied that Plaintiff was being "overly emotional."

27. By this time, Mr. Small was no longer Plaintiff's supervisor, and her new supervisor, Mr. Tom Duong ("Mr. Duong"), had assumed management responsibilities on March

6, 2023. Mr. Duong responded to Plaintiff's concerns with dismissive remarks, stating that "maybe you're not used to technology," a comment reflecting both age-based and racial stereotypes suggesting incompetence or confusion. These comments reflected a recurring pattern of gender- and race-based stereotyping—dismissing her legitimate distress as irrational and "emotional," a trope often weaponized against women of color, rather than recognizing her right to a safe and respectful work environment.

<u>Continued Discrimination and Failure to Accommodate</u>

28.     On May 8, 2023, Plaintiff underwent right-wrist surgery related to Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy. She provided Columbia with medical documentation describing her restrictions and recovery needs.

29.     After returning to work, Plaintiff requested reasonable accommodations from HR representative Kellie Brown, including a compatible ergonomic keyboard and mouse. Columbia delayed action for several weeks and then provided equipment that was not compatible with her workstation.

30.     When Plaintiff requested wired alternatives that would work with her setup, she was characterized as "difficult" and "uncooperative." Columbia did not engage in a good-faith interactive process, and the lack of effective equipment exacerbated her hand and wrist symptoms, limiting her ability to type for sustained periods. These failures concern disability-based obligations and reflect indifference to Plaintiff's documented limitations. This characterization also mirrored a broader pattern in which management labeled Plaintiff—an older Latina employee—as "noncompliant" for asserting her needs, reinforcing racially and gendered stereotypes about assertive women of color.

31.    Beginning in May 2023, Plaintiff began receiving multiple text messages and mailed notices from Columbia University urging her to complete an "Alzheimer's Study" survey, as though she were an enrolled participant. Plaintiff had never consented to or registered for any such study and had not disclosed her ethnicity or medical background to the University in a way that would justify her inclusion. Plaintiff advised HR that she does not have Alzheimer's or a predisposition and asked that the communications stop. The messages were unsolicited, targeted, and had no connection to her job duties or disability accommodations and reasonably raised concern about age-based stereotyping.

<u>Retaliation and Escalating Hostility After Protected Activity</u>

32.    After months of enduring discriminatory treatment based on her age and disability, Plaintiff filed a formal Charge of Discrimination with the New York State Division of Human Rights on August 17, 2023. Shortly thereafter, Columbia's management began a campaign of retaliation that mirrored and intensified the same discriminatory dynamics she had reported. Her supervisors' demeanor toward her changed markedly—they began scrutinizing her attendance, questioning her timesheets, and excluding her from routine communications.

33.    Plaintiff's direct supervisor, Mr. Duong, became increasingly hostile. He questioned her competence in front of co-workers, interrupted her work to challenge routine decisions, and adopted a condescending tone. Mr. Duong's dismissive treatment of Plaintiff contrasted sharply with his interactions with non-Latino and male employees, whom he treated with patience and respect. For example, a White male employee, Andrei Bezdenejnyi ("Mr. Bezdenejnyi") was promoted to a lead role and permitted to work the overnight shift alone, while Plaintiff—despite her greater tenure and experience—was assigned to daytime shifts with multiple staff members and expected to perform work equivalent to that of a supervisor without the

corresponding title or pay.[3] His repeated interruptions and challenges to her competence reflected not only bias based on her age and disability, but also racialized and gendered assumptions about her credibility and professionalism as a Latina woman. His behavior made clear that Plaintiff was viewed as a problem employee because she had complained about discrimination.

34.     On October 23, 2023, Mr. Duong instructed another supervisor, Orlando Roman ("Mr. Roman"), not to submit Plaintiff's timesheet, stating that "she wasn't present to fill it out," even though she had been working that day. Mr. Roman refused and submitted it as required. This attempt to interfere with Plaintiff's pay demonstrated retaliatory motive and an effort to undermine her credibility following her protected complaint.

35.     When co-worker Jessica Fernandez ("Ms. Fernandez") reported this incident to HR representative Kristie Reynoso-Miranda, explaining that Mr. Duong had threatened Plaintiff's livelihood, HR took no remedial action.

36.     The retaliation escalated further on October 31, 2023, when Mr. Duong publicly confronted Plaintiff while she awaited IT assistance for a SharePoint issue, standing behind her and demanding that she "enter [her] password." When Plaintiff objected, he stated he was "tired of [her] sh—." The outburst humiliated Plaintiff in front of colleagues and reinforced that management's hostility was tolerated because it was directed at someone who had complained.

37.     Plaintiff immediately reported the October 31 incident to HR and her union as harassment and intimidation. Columbia minimized the event as a "communication issue" and failed to conduct an investigation. The lack of corrective action emboldened Mr. Duong and deepened the hostile environment.

---

[3] The overnight shift was considered the most desirable for lead employees because it involved less chaos, fewer staff to supervise, and more autonomy in task management. Despite Plaintiff's experience and long tenure as a Lead since 2019, she was never offered or considered for this shift, while a white male employee who was promoted after her received it. This disparity further underscores the preferential treatment given to non-Latino male employees.

38.     In November 2023, Plaintiff began experiencing renewed technical barriers—loss of system access, missing passcodes, and login errors—that interfered with her ability to perform her duties. When she explained that these interruptions aggravated her wrist-related limitations, management dismissed her concerns and implied she was "making excuses." The timing and dismissive response reflected both retaliation for her prior complaints and indifference toward her disability.

39.     In response to this pattern of escalating retaliation and Columbia's failure to address her earlier complaints, Plaintiff filed a second charge of discrimination and retaliation with the New York State Division of Human Rights on December 29, 2023. The charge detailed Columbia's retaliatory conduct following her initial August 2023 filing, including the technical interference, dismissive treatment, and worsening hostility from management.

40.     By early 2024, the discrimination and retaliation had become intertwined. Plaintiff continued to face unwarranted scrutiny and disrespect from Mr. Duong, who monitored her breaks and questioned her timesheets without cause. On January 30, 2024, she emailed HR explaining that his behavior made the environment "stressful and disrespectful." Columbia's response—to schedule a "team reset meeting"—resulted in no accountability or change, further demonstrating its unwillingness to address discrimination when the complainant was an older, disabled Latina employee.

41.     On February 5, 2024, HR acknowledged in writing that Plaintiff's ergonomic equipment and workers' compensation issues had remained unresolved since her May 2023 surgery. Despite this admission, Columbia took no corrective action to provide appropriate equipment or relief. The continued failure to accommodate, even after formal acknowledgment, exemplified Columbia's indifference toward Plaintiff's disability.

42.    Columbia's only response was to provide "manager training" to Mr. Duong without imposing discipline. Leaving him in authority after multiple complaints sent a clear message that Plaintiff's safety and dignity were not a priority and that retaliation would go unpunished.

43.    Throughout the remainder of 2024, the retaliatory and discriminatory environment persisted. Mr. Duong continued to scrutinize Plaintiff's attendance and time entries, frequently questioning her accuracy in front of coworkers. Plaintiff's requests for updated ergonomic tools were repeatedly delayed or ignored, forcing her to work through pain that worsened her hand and wrist condition. HR representatives periodically checked in but offered no solutions. As the retaliation persisted, Plaintiff's exclusion from key communications and projects reinforced a broader pattern in which women of color, and particularly Latina employees, were marginalized within the department and denied professional visibility.

44.    Around this time, an older Latina woman, Yvette Berrios ("Ms. Berrios"), who had briefly been promoted to replace the prior supervisor, Mr. Roman, became overwhelmed by the volume of responsibilities and lack of institutional support provided to her in the role. Rather than offering her the resources or guidance necessary to succeed, Columbia demoted Ms. Berrios and reassigned her duties to Plaintiff without commensurate pay or title. This reinforced a recurring pattern in which Latina employees were set up to fail by being overburdened or denied proper support, while advancement opportunities were ultimately given to non-Latino counterparts. Following Ms. Berrios's demotion, Columbia appointed a male supervisor to permanently fill the position—further illustrating the pattern of excluding Latina women from leadership roles.

45.    In early January 2025, while Plaintiff was speaking with two male mechanics, her supervisor, Mr. Duong, made a remark referencing "menopausal mood swings" and suggesting she was "too sensitive." These comments mocked Plaintiff's physical symptoms and reinforced

13

sexist and ageist stereotypes portraying older women as emotional or unstable. Plaintiff's coworker, Jessica Fernandez ("Ms. Fernandez"), supported Plaintiff during the exchange. Two days later, Ms. Fernandez was abruptly terminated, further contributing to the toxic work environment and reinforcing the retaliatory culture that had developed under Mr. Duong's supervision.

46.    On or about February 9, 2025, Plaintiff arrived at work to discover that her locked desk drawer had been forcibly opened and her personal feminine hygiene products removed. The invasion followed soon after the menopause-related remarks and was clearly intended to humiliate her. Plaintiff reported the incident to Executive Director Marjorie Stockford ("Ms. Stockford"), who refused to investigate, further evidencing Columbia's disregard for gender-based harassment.

47.    The next day, February 10, 2025—one day after Plaintiff complained about the invasion of privacy and sexist comments—Ms. Stockford informed Plaintiff that her position was being "restructured." Ms. Stockford stated that certain administrative functions would be reassigned to "employees more adaptable with technology," a phrase echoing earlier age-related comments and implying that Plaintiff's age made her less capable. Although Columbia characterized the change as a voluntary transition, Plaintiff was effectively pressured to step down from her Lead Worker position under threat of termination, given the abruptness of the restructuring and the lack of alternative options presented.

48.    As part of the restructuring, Plaintiff was stripped of supervisory responsibilities, reassigned to lower-level clerical work, and made to report to employees she had previously trained. Her weekly pay was reduced by approximately four percent (4%)—the same percentage by which her compensation had been increased when she was promoted to Lead Worker—and Columbia provided no performance-based justification or documentation supporting the change.

The abrupt timing—less than twenty-four hours after Plaintiff's protected complaint—demonstrates that Columbia's actions effectively forced her demotion and were retaliatory and motivated by age, disability, and gender bias.

49.     Following her demotion, Plaintiff was relocated to a small cubicle near the copy area, excluded from meetings she had once led, and subjected to daily monitoring of her login and break times. Her duties and privileges as a Lead Worker were removed in a manner designed to humiliate her and discourage further complaints.

50.     Plaintiff reported the demotion and hostile treatment to Human Resources and her union, explaining that the loss of pay and duties occurred immediately after she reported harassment and retaliation. HR acknowledged her concerns but refused to investigate or restore her prior role.

51.     Columbia's continued refusal to correct its actions caused Plaintiff emotional distress, reputational harm, and financial loss. The sequence of events—beginning with her protected complaint in August 2023 and culminating in her February 2025 demotion—demonstrates a continuous pattern of retaliation and discrimination based on her age, disability, race, and gender.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the Americans with Disabilities Act ("ADA")**
**42 U.S.C. § 12101 *et seq*.**
(Disparate Treatment & Hostile Work Environment)

52.     Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

53.     The ADA prohibits employers from discriminating against qualified individuals with disabilities in the terms, conditions, and privileges of employment, including harassment that creates a hostile or abusive working environment. 42 U.S.C. § 12112(a).

54.    At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1), as she was diagnosed with Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy—conditions that substantially limit her ability to perform manual tasks, including typing and mousing.

55.    Columbia was aware of Plaintiff's disabilities since at least 2019, and again following her May 2023 wrist surgery, when she provided medical documentation and requested ergonomic accommodations.

56.    Despite this knowledge, Columbia subjected Plaintiff to adverse and discriminatory treatment, including:

    a.    dismissing her reports of technology malfunctions as "user error";

    b.    making ability-based comments such as "maybe you're not used to technology";

    c.    repeatedly disregarding her requests for workplace modifications and ergonomic equipment following her wrist surgery;

    d.    labeling her as "difficult" and "uncooperative" when she sought accommodations necessary to perform her job; and

    e.    citing her physical restrictions and need for accommodations as justification for reducing her duties and pay during the February 2025 "restructuring."

57.    When Plaintiff sought appropriate ergonomic equipment, supervisors mocked and trivialized her limitations, characterizing her as "difficult" and "uncooperative." These comments reflected bias and a lack of respect for Plaintiff's documented medical condition.

58.    Columbia's actions—including its repeated refusal to provide compatible equipment, dismissal of her documented limitations, and differential treatment after requesting accommodations—culminated in her February 2025 demotion, where Columbia explicitly cited

her limited adaptability and physical restrictions as reasons to reassign her duties non-disabled employees.

59.     By using Plaintiff's disability as a basis to reduce her responsibilities, lower her pay, and remove her from supervisory duties, Columbia engaged in unlawful discrimination in violation of the ADA.

60.     Columbia's conduct materially altered the terms and conditions of Plaintiff's employment by impeding her ability to perform essential job functions, exacerbating her physical symptoms, diminishing her role, and undermining her professional reputation.

61.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT II
### Violation of the Americans with Disabilities Act ("ADA")
### 42 U.S.C. § 12112
(Failure to Provide Reasonable Accommodation)

62.     Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

63.     The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A), requires employers to provide reasonable accommodations to qualified employees with known disabilities, unless such accommodations would impose an undue hardship on the operation of the business.

64.     At all relevant times, Plaintiff was a qualified individual capable of performing the essential functions of her position as a Facilities Services Coordinator with or without reasonable accommodation.

65.     Columbia had notice of Plaintiff's disabilities since at least 2019 and renewed notice in 2023 following her wrist surgery, when she provided medical documentation and requested ergonomic equipment and other workplace adjustments to accommodate her limitations.

66.     Despite this notice, Columbia failed to engage in a good-faith interactive process and denied or unreasonably delayed accommodations necessary for Plaintiff to perform her essential job functions. Columbia ignored repeated requests for ergonomic devices and, when equipment was provided, issued wireless keyboards and mice that were incompatible with her workstation and aggravated her symptoms.

67.     In addition, Columbia failed to address persistent technological malfunctions that required Plaintiff to spend extended hours troubleshooting, navigating login errors, and managing overheating equipment. These unresolved issues directly exacerbated her hand and wrist pain and interfered with her ability to complete essential job duties.

68.     Columbia's refusal to provide effective ergonomic support or remedy the ongoing technical barriers constituted a failure to provide reasonable accommodation under the ADA. These failures were not justified by any undue hardship or legitimate business necessity and instead reflected indifference toward Plaintiff's documented medical restrictions.

69.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT III
### Violation of the Americans with Disabilities Act ("ADA")
### 42 U.S.C. § 12203
(Retaliation)

70.     Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

71.    The ADA prohibits employers from retaliating against an employee who engages in protected activity, including requesting accommodations or complaining about disability-based discrimination. 42 U.S.C. § 12203(a).

72.    Plaintiff engaged in protected activity when she requested ergonomic accommodations, reported repeated IT malfunctions impacting her disability, and complained to HR about Columbia's dismissive treatment of her requests.

73.    Following these protected actions, Columbia retaliated against Plaintiff by increasing scrutiny of her work, excluding her from meetings, making disparaging remarks about her "attitude," and ultimately forcing her to step down in February 2025 under the guise of a "restructuring." Plaintiff reasonably believed that if she did not step down, she would be terminated, as the duties of her position were increasingly redefined to resemble those of a supervisor, exceeding her job classification.

74.    The alleged "restructuring" reassigned Plaintiff's duties to non-disabled employees described as "more adaptable with technology," stripped her supervisory responsibilities, and reduced her pay—all within one day of her protected complaint to HR.

75.    Columbia's retaliatory acts were materially adverse and would dissuade a reasonable employee from engaging in protected activity.

76.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**<u>COUNT IV</u>**
**Violation of the Age Discrimination in Employment Act ("ADEA")**
**29 U.S.C. § 623(a)(1)**
(Age Discrimination)

77.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

78.    The ADEA prohibits employers from discriminating against employees who are forty (40) years of age or older with respect to compensation, terms, conditions, or privileges of employment, because of their age. 29 U.S.C. § 623(a)(1).

79.    At all relevant times, Plaintiff was over forty (40) years of age and therefore a member of the class of persons protected by the ADEA.

80.    Plaintiff performed her job duties satisfactorily and met Columbia's legitimate performance expectations.

81.    Despite her satisfactory performance, Columbia subjected Plaintiff to adverse employment actions, including but not limited to:

    a.   denying her requests for reasonable support and resources;

    b.   subjecting her to demeaning comments implying that she was too old to adapt to technology and "menopausal" or "overly sensitive"; and

    c.   suggesting that her repeated technology malfunctions were due to her inability to understand modern systems rather than legitimate technical errors.

82.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**<u>COUNT V</u>**
**Violation of the Age Discrimination in Employment Act ("ADEA")**
**29 U.S.C. § 623(d)**
(Retaliation)

83.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

84.    The ADEA prohibits employers from retaliating against employees who oppose unlawful age discrimination or participate in proceedings under the Act.

85.     Plaintiff engaged in protected activity when she complained to Human Resources and her union about age-based remarks, harassment, and disparate treatment, and when she filed a formal Charge of Discrimination with the New York State Division of Human Rights in August 2023.

86.     Immediately after engaging in protected activity, Plaintiff was subjected to escalating hostility, including excessive scrutiny of her work, false accusations of poor performance, and exclusion from meetings and communications.

87.     On February 10, 2025—less than twenty-four hours after complaining about age-based comments and privacy violations—Plaintiff was demoted under the pretext of a departmental "restructuring," losing supervisory duties, pay, and professional standing.

88.     The proximity between Plaintiff's protected complaints and the adverse employment actions, combined with the lack of legitimate business justification, demonstrates that Columbia's conduct was retaliatory.

89.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

### COUNT VI
### Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e-2(a)(1)
(Sex Discrimination & Hostile Work Environment)

90.     Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

91.     Title VII prohibits employers from discriminating against employees with respect to the terms, conditions, or privileges of employment because of their sex and likewise prohibits maintaining a hostile or abusive work environment that interferes with an employee's ability to perform her job.

92.     Beginning in 2023 and continuing through 2025, Columbia subjected Plaintiff to a hostile and discriminatory environment based on her sex. Supervisors and managers made demeaning comments related to her gender and physiology—referring to "menopausal mood swings," calling her "too sensitive," and ridiculing her for reporting workplace misconduct.

93.     In February 2025, Plaintiff discovered that her locked desk drawer had been forcibly opened and her personal feminine-hygiene products removed shortly after the sexist remarks were made. The incident was deeply degrading and calculated to embarrass her because she is a woman.

94.     Plaintiff reported the incident to Executive Director Ms. Stockford, who refused to investigate or take corrective action. This deliberate inaction communicated tolerance for gender-based harassment and reinforced the hostile environment.

95.     The following day, Columbia demoted Plaintiff under the pretext of a departmental "restructuring," removing her supervisory duties, reducing her pay, and assigning her to clerical tasks performed by employees she had previously trained.

96.     Columbia's conduct—including the repeated sexist remarks, the invasion of her privacy, and its refusal to act on her complaint—created a hostile and abusive work environment that materially altered the terms and conditions of Plaintiff's employment and was motivated by sex-based animus and stereotypes about women.

97.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT VII**
**Violation of Title VII & Section 1981**
**42 U.S.C. § 2000e**
(Race and National Origin Discrimination)

98.     Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

99.     Title VII and 42 U.S.C. § 1981 prohibit employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment because of race, color, or national origin.

100.    At all relevant times, Plaintiff was a qualified employee who performed her job duties satisfactorily and met Columbia's legitimate performance expectations

101.     Plaintiff is a Latina woman and, throughout her employment, was treated less favorably than her non-Latina colleagues. Columbia management routinely dismissed her concerns, delayed her requests for support, and attributed performance issues to her character rather than to legitimate workplace barriers.

102.    Plaintiff's supervisor, Mr. Duong frequently minimized her contributions and subjected her to condescending treatment not directed toward similarly situated non-Latina employees. When she requested accommodations or raised concerns about bias, she was labeled "difficult," "uncooperative," and "emotional," reflecting racially and culturally coded stereotypes that questioned her professionalism and temperament.

103.    Columbia also failed to take her complaints seriously or provide meaningful redress, choosing instead to ignore her reports or shift blame back onto her. This pattern of dismissal and disproportionate scrutiny reflected implicit and explicit bias based on her race and national origin.

104.    The unequal treatment Plaintiff experienced—including delayed responses to her accommodation requests, exclusion from meetings, minimization of her work, and unwarranted criticism—was motivated by discriminatory animus based on her Latina identity.

23

105.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT VIII
### Violation of Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000e-3(a)
(Retaliation)

106.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

107.    Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees for opposing discriminatory practices or for reporting harassment. 42 U.S.C. § 2000e–3(a).

108.    Plaintiff engaged in multiple forms of protected activity, including:

a.   Filing a formal Charge of Discrimination with the New York State Division of Human Rights on August 17, 2023, alleging race, national origin, age, disability, and sex discrimination; and

b.    complaining internally in February 2025 to Executive Director Ms. Stockford about sexist, age-related, and retaliatory conduct, as well as the invasion of her privacy following the removal of personal items from her desk.

109.    Within one day of this complaint, Columbia informed Plaintiff that her position was being "restructured," citing a need for employees "more adaptable with technology." This explanation mirrored prior comments about her age and physical limitations and served as pretext for retaliation.

110.    Following her protected complaints, Columbia demoted Plaintiff to Facilities Service Center coordinator, taking away her Lead worker title, reduced her pay, excluded her from

meetings, reassigned her duties to non-Latina employees she had previously trained, and continued to marginalize her professionally.

111.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT IX**
**Violation of the NYSHRL and the NYCHRL**
(Disability Discrimination)

112.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

113.    The NYSHRL and NYCHRL make it unlawful for an employer to discriminate against an employee because of her actual or perceived disability or to fail to provide reasonable accommodations necessary to enable her to perform her job.

114.    Plaintiff is a qualified individual with disabilities, including Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy, which substantially limit her ability to perform manual tasks such as typing and mousing.

115.    Columbia was aware of Plaintiff's disabilities as early as 2019 and again following her May 2023 wrist surgery, when she provided medical documentation and requested ergonomic accommodations.

116.    Columbia failed to provide timely and effective accommodations and refused to engage in a good-faith interactive process. When Plaintiff requested appropriate equipment, she was dismissed as "difficult" and denied the tools necessary to perform her job.

117.    Instead of supporting Plaintiff, Columbia subjected her to heightened scrutiny, denied technical assistance, and diminished her role, exacerbating her pain and impairing her ability to work.

118.    Columbia's repeated failure to accommodate Plaintiff's medical needs and its dismissive treatment of her requests violated both the NYSHRL and NYCHRL.

119.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT X
### Violation of the NYSHRL and the NYCHRL
(Age Discrimination)

120.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

121.    The NYSHRL and NYCHRL prohibit employers from discriminating against employees because of age with respect to compensation, terms, conditions, or privileges of employment.

122.    At all relevant times, Plaintiff was over forty (40) years of age and therefore a member of the class of persons protected under both statutes.

123.    Plaintiff performed her job duties satisfactorily and met Columbia's legitimate performance expectations.

124.    Despite her satisfactory performance, Columbia subjected Plaintiff to adverse employment actions, including but not limited to:

a.   denying her requests for adequate support and resources;

b.   subjecting her to demeaning comments implying she was too old to adapt to technology or "menopausal" and "overly sensitive";

c.   suggesting that her recurring technological issues were due to her inability to understand modern systems rather than legitimate equipment malfunctions; and

d.   demoting her from her Facilities Services Coordinator position to lower-level clerical work, accompanied by a reduction in pay and status.

26

125.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT XI**
**Violation of the NYSHRL and the NYCHRL**
(Sex Discrimination & Hostile Work Environment)

126.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

127.    The NYSHRL and NYCHRL prohibit employers from discriminating against employees in the terms, conditions, or privileges of employment because of their sex.

128.    Beginning in 2023 and continuing through 2025, Columbia subjected Plaintiff to a hostile and discriminatory environment based on her sex. Supervisors and managers made demeaning comments related to her gender and physiology—referring to "menopausal mood swings," calling her "too sensitive," and ridiculing her for reporting workplace misconduct.

129.    In February 2025, Plaintiff discovered that her locked desk drawer had been forcibly opened and her personal feminine-hygiene products removed shortly after the sexist remarks were made. The incident was deeply degrading and calculated to embarrass her because she is a woman.

130.    Plaintiff reported the incident to Executive Director Ms. Stockford, who refused to investigate or take corrective action. This deliberate inaction communicated tolerance for gender-based harassment and reinforced the hostile environment.

131.    The following day, Columbia demoted Plaintiff under the pretext of a departmental "restructuring," removing her supervisory duties, reducing her pay, and assigning her to clerical tasks performed by employees she had previously trained.

132.    Columbia's conduct—including the repeated sexist remarks, the invasion of her privacy, and its refusal to act on her complaint—created a hostile and abusive work environment

that materially altered the terms and conditions of Plaintiff's employment and was motivated by sex-based animus and stereotypes about women.

133.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT XII**
**Violation of the NYSHRL and the NYCHRL**
(Race and National Origin Discrimination)

134.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

135.    The New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") prohibit discrimination and harassment in employment based on race and national origin.

136.    Plaintiff is a Latina woman and is therefore a member of protected classes under both statutes.

137.    Throughout her employment, Plaintiff was treated less favorably than her non-Latina colleagues. Columbia management routinely dismissed her concerns, delayed her requests for support, and attributed performance issues to her character rather than to legitimate workplace barriers.

138.    Plaintiff's supervisor, Mr. Duong frequently minimized her contributions and subjected her to condescending treatment not directed toward similarly situated non-Latina employees. When she requested accommodations or raised concerns about bias, she was labeled "difficult," "uncooperative," and "emotional," reflecting racially and culturally coded stereotypes that questioned her professionalism and temperament.

139.    Columbia also failed to take her complaints seriously or provide meaningful redress, choosing instead to ignore her reports or shift blame back onto her. This pattern of

dismissal and disproportionate scrutiny reflected implicit and explicit bias based on her race and national origin.

140.    The unequal treatment Plaintiff experienced—including delayed responses to her accommodation requests, exclusion from meetings, minimization of her work, and unwarranted criticism—was motivated by discriminatory animus based on her Latina identity.

141.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT XIII
### Violation of the NYSHRL and the NYCHRL
(Retaliation)

142.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

143.    The NYSHRL and NYCHRL prohibit retaliation against employees who oppose discrimination or participate in protected activities.

144.    Plaintiff engaged in protected activity when she complained to Human Resources about age, sex, and disability-based discrimination and when she filed a Charge of Discrimination with the New York State Division of Human Rights in August 2023.

145.    Following these complaints, Plaintiff was subjected to escalating hostility, including exclusion from meetings, micromanagement, denial of resources, and demeaning treatment by her supervisors.

146.    On February 10, 2025—less than one day after reporting a privacy invasion and sexist remarks—Columbia demoted Plaintiff under the pretext of "restructuring," reducing her pay and stripping her of key responsibilities.

147.    The proximity between Plaintiff's protected activity and these adverse actions, combined with Columbia's disregard of its own disciplinary and reclassification procedures, evidences retaliatory intent.

148.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT XIV**
**AIDING AND ABETTING DISCRIMINATION**
(Against Defendant Duong Individually)

149.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

150.    Under New York law, both the NYSHRL and the NYCHRL make it unlawful for any individual to aid, abet, incite, compel, or coerce discriminatory or retaliatory acts. A supervisor may be held individually liable where they directly participate in, encourage, or fail to prevent such unlawful conduct.

151.    Defendant Duong knowingly and intentionally participated in Columbia's discriminatory and retaliatory actions against Plaintiff by engaging in conduct that included:

   a.    making age-based, gender-based, and disability-related remarks that demeaned Plaintiff;

   b.    dismissing her accommodation needs as "user error"; interfering with her timesheet submission; publicly humiliating her in front of colleagues; and

   c.    participating in or recommending her February 2025 demotion within twenty-four hours of her protected complaint.

152.    Defendant Duong's actions were taken with knowledge that they violated Plaintiff's rights under the NYSHRL and NYCHRL and were intended to assist or encourage Columbia in carrying out its discriminatory and retaliatory practices.

153.    Defendant Duong's direct participation, encouragement, and knowing failure to prevent these violations constitute aiding and abetting under both the NYSHRL and NYCHRL.

154.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

**COUNT XV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

155.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

156.    Under New York law, to establish a claim for intentional infliction of emotional distress, a plaintiff must show that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional distress, resulting in actual harm.

157.    Defendants acted knowingly, intentionally, and willfully when they:

a.    Mocked Plaintiff's physical limitations and dismissed her documented disabilities as "user error" or "incompetence";

b.    Made repeated comments implying she was "too sensitive" and suffering from "menopausal mood swings," invoking sexist and ageist stereotypes;

c.    Forcibly entered Plaintiff's locked desk drawer and removed her personal feminine hygiene products, intending to humiliate her;

d.    Publicly berated Plaintiff in front of co-workers and subordinates, including demanding that she "enter [her] password" while standing over her in a threatening manner; and

e.    Retaliated against Plaintiff by demoting her less than twenty-four hours after she reported harassment, citing her "lack of adaptability" as pretext for discrimination.

158.    Defendants' deliberate acts were so extreme and outrageous as to go far beyond the bounds of decency tolerated in a civilized community. Their conduct was not a mere workplace dispute but a pattern of targeted humiliation, harassment, and retaliation.

159.    Defendants acted with the intent to cause Plaintiff severe emotional distress or, at minimum, in reckless disregard of the near certainty that their conduct would do so.

160.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

<u>**COUNT XVI**</u>
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Against Columbia)

161.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

162.    Under New York law, to establish a claim for negligent infliction of emotional distress, a plaintiff must show that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty through negligent conduct, and that the breach directly caused genuine and substantial emotional harm. Extreme and outrageous conduct is not required, but the emotional harm must be a direct, rather than consequential, result of the defendant's negligence.

163.    Columbia owed Plaintiff a duty to provide a safe, non-discriminatory, and non-retaliatory workplace, and to take reasonable measures to prevent harassment, humiliation, and emotional harm by its supervisory staff.

164.    Columbia breached that duty when it negligently failed to supervise, train, or discipline Mr. Duong after becoming aware of his repeated harassment, discriminatory remarks, and retaliatory conduct toward Plaintiff.

165.    Columbia knew or reasonably should have known that its failure to act in response to Plaintiff's repeated complaints—documented in writing to Human Resources and management—would foreseeably result in severe emotional harm.

166.    Columbia's negligence allowed the discriminatory and retaliatory behavior to persist and directly caused Plaintiff emotional distress, humiliation, anxiety, and physical aggravation of her medical conditions.

167.    The emotional harm suffered by Plaintiff was a direct and foreseeable result of Columbia's negligent failure to protect her from continued workplace hostility and retaliation.

168.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

### COUNT XVII
### NEGLIGENT HIRING, RETENTION, AND SUPERVISION
(Against Columbia)

169.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

170.    Under New York law, an employer may be held liable for negligent hiring, retention, or supervision when it knew or should have known of an employee's propensity for the conduct that caused injury and failed to take reasonable steps to prevent foreseeable harm. The claim requires proof that the employer's negligence in hiring, retaining, or supervising the employee was a proximate cause of the plaintiff's injuries.

171.    Columbia owed Plaintiff a duty to hire, supervise, and retain competent and non-discriminatory supervisory personnel, and to take prompt corrective action upon learning of misconduct that endangered the safety or emotional well-being of its employees.

172.    Columbia breached this duty by retaining and failing to properly supervise Mr. Duong despite having actual and constructive knowledge of his history of discriminatory remarks, retaliatory conduct, and harassment directed toward Plaintiff.

173.    Columbia was aware of multiple reports and complaints regarding Mr. Duong's behavior, including his October 2023 outburst, his interference with Plaintiff's timesheet, and his January 2025 comments referencing Plaintiff's "menopausal mood swings," yet failed to impose corrective or disciplinary action.

174.    Columbia's failure to act enabled Mr. Duong's continuing pattern of harassment, retaliation, and intimidation, directly leading to Plaintiff's emotional distress, humiliation, and demotion in February 2025.

175.    Columbia's negligent supervision and retention of Mr. Duong proximately caused Plaintiff to suffer severe emotional distress, humiliation, reputational harm, and economic loss.

176.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## <u>COUNT XVIII</u>
**TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIP**
(Against Duong Individually)

177.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

178.    Under New York law, a claim for tortious interference with an employment relationship arises when a defendant intentionally and improperly interferes with a valid employment relationship between the plaintiff and a third party, using dishonest, unfair, or unlawful means, and such interference proximately causes injury to the plaintiff's employment relationship.

179.    Plaintiff maintained a valid and ongoing employment relationship with Columbia University.

180.    Defendant Duong, acting outside the scope of his legitimate supervisory authority and motivated by personal animus and retaliatory intent, intentionally interfered with that employment relationship.

181.    Defendant Duong's interference included:

    a.    directing another supervisor not to process Plaintiff's timesheet, falsely suggesting that she was absent from work;

    b.    making disparaging and demeaning remarks that undermined her credibility with Human Resources and management; and

    c.    actively participating in or recommending her demotion.

182.    Defendant Duong's actions were undertaken not in the interest of Columbia University but for the improper purpose of humiliating Plaintiff and retaliating against her for engaging in protected activity.

183.    Defendant Duong's conduct was dishonest, unfair, and improper, constituting independent tortious acts of retaliation and harassment that were outside the scope of his employment duties.

184.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## COUNT XIX
## VIOLATION OF NEW YORK LABOR LAW § 215

185.    Plaintiff incorporates by reference paragraphs 1 through 51 as alleged above.

186.    Under New York law, Section 215 of the New York Labor Law prohibits employers, their agents, and officers from discharging, threatening, penalizing, or otherwise retaliating against employees for making a good-faith complaint about conduct they reasonably believe violates the Labor Law, including interference with wages, hours, or other terms and conditions of employment.

187.    Plaintiff engaged in protected activity when she raised internal complaints and union grievances concerning Columbia's workplace discrimination, technological issues, and improper handling of her timesheet.

188.    Shortly thereafter, Defendant Duong intentionally directed another supervisor not to submit Plaintiff's timesheet, falsely claiming she had not been present, with the intent to undermine her pay and credibility.

189.    Columbia failed to correct or address this retaliatory act and instead permitted Mr. Duong's conduct to continue unchecked, culminating in Plaintiff's demotion on February 10, 2025, under the pretext of departmental restructuring.

190.    Defendants' actions constituted unlawful retaliation under New York Labor Law § 215, as they were taken because of Plaintiff's good-faith efforts to assert her workplace rights and report unlawful conduct.

191.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and harm to her professional reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Iris Calderon respectfully requests that this Court enter judgment in her favor and against Defendant The Trustees of Columbia University in the City of New York, and grant the following relief:

a.  Declaring that Defendants' conduct described herein violated the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New York State and City Human Rights Laws (NYSHRL and NYCHRL), the New York Labor Law § 215, and New York common-law tort claims;

b.  Declaring that Defendants are jointly and severally liable for all damages arising from their discriminatory, retaliatory, and tortious conduct;

c.  Awarding Plaintiff back pay, front pay, and lost benefits to fully compensate her for the wages, bonuses, and other employment benefits she was denied as a result of Defendant's unlawful conduct;

d.  Awarding Plaintiff compensatory damages for emotional distress, humiliation, reputational harm, and loss of enjoyment of life caused by Defendants' discrimination and retaliation;

e.  Awarding Plaintiff liquidated damages under the ADEA for Defendants' willful and reckless disregard of her federally protected rights;

f.  Awarding Plaintiff punitive damages under Title VII, Section 1981, the ADA, and the NYCHRL for Defendant's malicious, reckless, and intentional disregard of her rights;

g.  Awarding Plaintiff pre-judgment and post-judgment interest on all sums awarded;

 h. Awarding Plaintiff reasonable attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. §§ 1988, 2000e-5(k), 12117(a), 1981a, 29 U.S.C. § 626(b), and the NYSHRL and NYCHRL; and

 i. Granting such other and further relief as this Court deems just and proper.

Dated: October 27, 2025
New York, New York

        Respectfully submitted,
        */s/ Francisco Mundaca*
        Francisco E. Mundaca, Esq.
        (New York Bar No.: 4737888)
        The Mundaca Law Firm, LLC
        1997 Annapolis Exchange Pkwy
        Suite 300
        Annapolis, Maryland 21401
        Phone: (202) 474-8500
        Fax: (240) 233-8626
        Email: fmundaca@mundacalaw.com

        *Counsel for Plaintiff*