UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRIS CALDERON,

Plaintiff,

- against -

THE TRUSTEES OF COLUMBIA UNIVERSITY and TOM DUONG, individually,

Defendants.

25 Civ. 8918 (GS)

OPINION & ORDER

**GARY STEIN, United States Magistrate Judge:**

This is an employment discrimination action brought by Plaintiff Iris Calderon ("Calderon" or "Plaintiff") against Defendant The Trustees of Columbia University in the City of New York ("Columbia") and Calderon's supervisor, Defendant Tom Duong ("Duong") (together, "Defendants"). Defendants move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss certain of Plaintiff's statutory claims under federal and New York state law. (Dkt. No. 25). For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### A. Plaintiff's Allegations

As alleged in the Complaint, Calderon has worked for Columbia since 2008 as a Facilities Services Coordinator within its Facilities and Operations Department. (Dkt. No. 1 ("Compl." or "Complaint") ¶ 15). She was promoted to Lead Facilities Service Coordinator in 2019. (*Id.* ¶ 16).

Calderon is a Latina woman who, at the time of the Complaint, was 53 years old. (*Id.* ¶ 15). She suffers from disabilities including Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy, which substantially limit her ability to perform manual work tasks such as typing and using a mouse. (*Id.* ¶¶ 6, 17). Columbia has been aware of her disabilities since as early as July 2021, knowledge that was confirmed as a result of right-wrist surgery Calderon underwent in May 2023 related to her conditions. (*Id.* ¶¶ 17, 28).

Plaintiff alleges that beginning in 2022, she experienced a series of ongoing technological issues at work, closely connected to her physical limitations from Carpal Tunnel Syndrome and Ulnar Nerve Neuropathy. (*Id.* ¶¶ 19–20). Over time, Columbia's responses to these events "reflected a lack of sensitivity toward [Calderon's] physical limitations and an emerging pattern of bias connected to her age and disability." (*Id.* ¶ 19).

For example, Calderon experienced repeated login failures and application malfunctions on her university-issued laptop. (*Id.* ¶ 21). Columbia issued her a new laptop, but the device overheated, aggravating Calderon's hand and wrist pain. (*Id.* ¶¶ 22–23). When she reported this to Columbia's Human Resources department, "HR failed to respond or take corrective action." (*Id.* ¶ 23; *see also id.* ¶¶ 25–27 (alleging that, in March 2023, Plaintiff's supervisor Duong responded to her concerns by stating that "maybe you're not used to technology," which Plaintiff describes as a "dismissive remark" reflecting "age-based" and "gender- and race-based stereotyping")).

After Calderon returned to work following her May 2023 wrist surgery, she requested reasonable accommodations from HR, including an ergonomic keyboard and mouse. (*Id.* ¶ 29). Columbia, however, delayed action for several weeks, then provided incompatible equipment, and then failed to engage in a good-faith interactive process to address the problem, instead characterizing Plaintiff as "noncompliant" for asserting her needs. (*Id.* ¶¶ 29–30). Also beginning in May 2023, Calderon received multiple unsolicited text messages and mailed notices from Columbia asking her to complete an "Alzheimer's Study," which she alleges raised concern about "age-based stereotyping." (*Id.* ¶ 31).

On August 17, 2023, Calderon filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), which was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to a work-sharing agreement between the EEOC and NYSDHR. (*Id.* ¶¶ 10, 32). Shortly thereafter, "Columbia's management began a campaign of retaliation that mirrored and intensified the same discriminatory dynamics [Calderon] had reported." (*Id.* ¶ 32). Duong "became increasingly hostile," and promoted a White male employee who received more desirable shifts than Plaintiff, "despite her greater tenure and experience." (*Id.* ¶ 33). Duong attempted to interfere with Plaintiff's pay and made demeaning comments about her in front of coworkers. (*Id.* ¶¶ 34–36).

On December 29, 2023, Calderon filed a second charge of discrimination as well as a charge of retaliation with the NYSDHR, which was also dual-filed with the EEOC. (*Id.* ¶¶ 11, 39). Yet Calderon continued to experience discrimination and

retaliation throughout 2024, with Duong subjecting her to "unwarranted scrutiny and disrespect." (*Id.* ¶¶ 40, 43). In the meantime, Columbia continued to fail to provide her with ergonomically appropriate equipment. (*Id.* ¶ 41).

In January 2025, Duong made remarks in front of Calderon's co-workers referencing "menopausal mood swings" and suggesting she was "too sensitive." (*Id.* ¶ 45). The next month, Calderon arrived at work to find that her locked desk drawer had been forcibly opened and her personal feminine hygiene products removed. (*Id.* ¶ 46).

On February 10, 2025, the day after she complained to management about Duong's menopause-related remarks and the removal of feminine hygiene products from her desk drawer, Columbia told Calderon that her position was being "restructured" and that certain of her job functions would be reassigned to "employees more adaptable with technology." (*Id.* ¶ 47). As part of the restructuring, Calderon was stripped of supervisory responsibilities, reassigned to lower-level clerk work, and relocated to a small cubicle near the copying area. (*Id.* ¶¶ 48–49). In addition, her pay was reduced by four percent. (*Id.* ¶ 48).

Calderon commenced this action on October 27, 2025. (Dkt. No. 1). Her Complaint asserts nineteen causes of action, most arising under federal and state anti-discrimination laws. In particular, Calderon alleges federal statutory claims for disparate treatment and hostile work environment, failure to accommodate, and retaliation under the Americans with Disabilities Act ("ADA") (Counts I–III, Compl. ¶¶ 52–76); age discrimination and retaliation under the Age Discrimination in

Employment Act ("ADEA") (Counts IV & V, *id.* ¶¶ 77–89); sex discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count VI, *id.* ¶¶ 90–97); and race and national origin discrimination and retaliation under Title VII and 42 U.S.C. § 1981 ("Section 1981") (Counts VII & VIII, *id.* ¶¶ 98–111). In addition, Calderon alleges claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") for disability discrimination, age discrimination, sex discrimination and hostile work environment, race and national origin discrimination, retaliation, and aiding and abetting discrimination (Counts IX–XIV, *id.* ¶¶ 112–54). Finally, Calderon alleges common law claims for intentional infliction of emotional distress; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and tortious interference with employment relationship (Counts XV–XVIII, *id.* ¶¶ 155–84), as well as a claim for violation of New York Labor Law § 215 (Count XIX, *id.* ¶¶ 185–91).

At the time the Complaint was filed, Calderon had not received a right-to-sue letter from the EEOC. The Complaint alleges that the letter was delayed due to the then-ongoing federal government shutdown, and that Calderon had timely requested the letter and would supplement the Complaint upon receipt of the letter. (*Id.* ¶ 13).

**B. Defendants' Partial Motion to Dismiss**

Columbia and Duong filed their motion to dismiss on February 24, 2026 (Dkt. No. 25), along with a supporting memorandum of law (Dkt. No. 26 ("Def. Br.")) and

a declaration from their counsel, Susan D. Friedfel, attaching exhibits (Dkt. 27 ("Friedfel Decl.")). Defendants' motion seeks to dismiss, in whole or in part, Plaintiff's claims under the ADA, Title VII, the ADEA, Section 1981, the NYSHRL, and the NYCHRL. (*See* Def. Br. at 1–2). Defendants have not moved to dismiss Plaintiff's common law claims or her claim under the New York Labor Law.

Defendants' motion papers include copies of Calderon's August 17, 2023 complaint filed with the NYSDHR (Friedfel Decl. Ex. B); her December 29, 2023 complaint filed with the NYSDHR (*id.* Ex. E); a Determination and Order After Investigation issued by NYSDHR on July 28, 2025 finding no probable cause to support Calderon's claims in her August 17, 2023 complaint and dismissing the complaint (*id.* Ex. C); a Determination and Order After Investigation issued by NYSDHR on July 21, 2025 finding no probable cause to support Calderon's claims in her December 29, 2023 complaint and dismissing that complaint (*id.* Ex. G); and documents in the NYSDHR file for the December 29, 2023 complaint obtained by Defendants pursuant to a Freedom of Information Law ("FOIL") request (*id.* Ex. F).[1]

Plaintiff submitted her memorandum of law in opposition to the motion to dismiss, with exhibits, on March 25, 2026. (Dkt. No. 30 ("Pl. Br.")). Defendants

---

[1] The Court may consider these materials on this motion to dismiss. First, Plaintiff's NYSDHR complaints are incorporated by reference in the Complaint (*see* Compl. ¶¶ 10–12). *See, e.g.*, *McKenzie v. Big Apple Training Inc.*, No. 22 Civ. 9554 (GHW), 2024 WL 1746057, at *3 n.5 (S.D.N.Y. Apr. 23, 2024). Second, courts regularly take judicial notice of NYSDHR orders finding no probable cause at the pleading stage. *See, e.g.*, *Brown v. Fat Dough Incorp.*, No. 22 Civ. 761 (BKS) (ML), 2024 WL 1345360, at *1 n.3 (N.D.N.Y. Mar. 29, 2024). Third, the Court may also take judicial notice of the other documents in the NYSDHR file. *See, e.g.*, *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006). Calderon does not dispute that the Court can consider any of these materials for purposes of deciding Defendants' motion. *See Stankiewicz v. Hopper*, No. 2:09-CV-277, 2010 WL 11537868, at *2 (D. Vt. Mar. 4, 2010) (taking judicial notice of materials where defendant requested such treatment and plaintiff "d[id] not object to this request").

submitted their reply brief on April 10, 2026 (Dkt. No. 31 ("Reply")), together with another declaration from their counsel attaching a notice from the EEOC concerning Plaintiff's August 2023 complaint (Dkt. No. 32 ("Reply Friedfel Decl.")).

## LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

"Rule 12(b)(1) requires a claim be dismissed for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Riordan v. NEC, Am. Fed'n of Gov't Emps., AFL-CIO*, No. 23 Civ. 881 (JPO), 2024 WL 1313614, at *1 (S.D.N.Y. Mar. 26, 2024) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see* Fed. R. Civ. P. 12(b)(1). "A 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *S.G. v. Success Acad. Charter Sch., Inc.*, No. 18 Civ. 2484 (KPF), 2019 WL 1284280, at *7 (S.D.N.Y. Mar. 20, 2019) (quoting *Makarova*, 201 F.3d at 113). "Where subject matter jurisdiction is contested, a district court may consider evidence outside the pleadings, such as affidavits and exhibits." *Id.* (citing *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B. Motion to Dismiss Under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] all factual allegations in the complaint as true" and "draw[ ] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court's task on a motion to dismiss "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

A district court may grant a motion to dismiss for failure to state a claim on the basis of an affirmative defense, but only when facts supporting the defense appear on the face of the complaint and other materials that can be considered, such as documents incorporated by reference into the complaint or matters of which

the court can take judicial notice. *In Re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 592 (S.D.N.Y. 2024).

## DISCUSSION

Defendants seek dismissal primarily on three different grounds. First, Defendants argue that Plaintiff's claims under Title VII and the ADA, her sex discrimination claim, and her ADEA claims post-dating December 29, 2023 should be dismissed because Plaintiff failed to exhaust her administrative remedies. (Def. Br. at 8–11). Second, Defendants argue that Plaintiff's claims under the NYSHRL and NYCHRL, to the extent they are based on pre-December 29, 2023 conduct, are barred by the election of remedies doctrine. (*Id.* at 11–13). Third, Defendants argue that Plaintiff's Section 1981 claims are barred by the doctrines of *res judicata* and collateral estoppel. (*Id.* at 13–14). The Court considers each of Defendants' arguments in turn.

### A. Exhaustion of Administrative Remedies

"In order to assert claims of workplace discrimination under Title VII, the ADA, or the ADEA, a plaintiff must first exhaust her administrative remedies by filing a complaint with the [EEOC]." *Tsekhanskaya v. City of New York*, No. 18 Civ. 7273 (KAM), 2020 WL 5802329, at *6 (E.D.N.Y. Sept. 29, 2020); *see also Hogans v. N.Y.C. Comptroller's Off.*, No. 23 Civ. 10514 (VSB) (OTW), 2025 WL 2783789, at *7 (S.D.N.Y. Aug. 26, 2025) ("A plaintiff is required to exhaust their administrative remedies before a Title VII, ADA, or ADEA suit can be brought."), *R&R adopted*, 2025 WL 2782305 (S.D.N.Y. Sept. 30, 2025), *appeal dismissed* (Jan. 7, 2026).

Where, as here (*see* Compl. ¶¶ 10–11; Friedfel Decl. Ex. B at 2[2] & Ex. F at 2), "a charge is a 'dual filed charge,' filing with the NYSDHR is the equivalent of filing with the EEOC for statute of limitations and exhaustion purposes." *Nash v. N.Y. State Exec. Dep't, Div. of Parole*, No. 96 Civ. 8354 (LBS), 1999 WL 959366, at *6 n.9 (S.D.N.Y. Oct. 20, 1999); *see Tsekhanskaya*, 2020 WL 5802329, at *7.

Before addressing the merits of Defendants' exhaustion arguments, the Court first considers the proper procedural framework for analyzing them. It is well settled that exhaustion of administrative remedies "'is a precondition to bringing [an employment discrimination claim] in federal court, rather than a jurisdictional requirement.'" *Wurtzburger v. Koret*, No. 16 Civ. 7897 (KMK), 2018 WL 2209507, at *4 (S.D.N.Y. May 14, 2018) (quoting *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015)); *see also Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (same). "For this reason, dismissal for failure to exhaust administrative remedies is subject to Rule 12(b)(6) for failure to state a claim upon which relief can be granted rather than Rule 12(b)(1) for lack of subject matter jurisdiction." *Taylor v. City of New Haven*, No. 3:22-CV-533 (AWT), 2023 WL 2456706, at *3 (D. Conn. Mar. 10, 2023); *accord, e.g.*, *Bosman v. McDonough*, No. 24 Civ. 5124 (JMW), 2025 WL 2371082, at *2 (E.D.N.Y. Aug. 14, 2025); *Smith v. City of New York*, No. 23 Civ. 8229 (JLR) (RWL), 2025 WL 1983047, at *4 n.4 (S.D.N.Y. June 3, 2025), *R&R*

[2] Unlike the other citations in this opinion, citations to the exhibits, such as those attached to the Friedfel Declaration and Plaintiff's brief, adopt the page numbers listed by the ECF reference at the top of the page.

*adopted*, 2025 WL 2022534 (S.D.N.Y. July 18, 2025); *Brown v. Daikin Am., Inc.*, No. 10 Civ. 4688 (CS), 2011 WL 10842873, at *4 n.3 (S.D.N.Y. Aug. 19, 2011).

Moreover, the Second Circuit has held that exhaustion of remedies under Title VII is an affirmative defense. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (holding that "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense"). As such, failure to exhaust administration remedies under Title VII "can only be a proper basis for a motion to dismiss under Rule 12(b)(6) if failure to exhaust appears on the face of the complaint." *Frederic v. NFC Amenity Mgmt.*, No. 17 Civ. 5769 (AJN), 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018). These same principles govern motions to dismiss claims under the ADA and the AEDA. *See Konyukhova v. Walgreen Co.*, No. 24 Civ. 4390 (VEC) (SDA), 2026 WL 1024121, at *11 (S.D.N.Y. Feb. 3, 2026), *R&R adopted*, 2026 WL 880381 (S.D.N.Y. Mar. 31, 2026); *Pierre-Louis v. U.S. Postal Serv.*, No. 22 Civ. 5655 (DG) (TAM), 2025 WL 2608939, at *6 n.13 (E.D.N.Y. Aug. 4, 2025).

With these precepts in mind, the Court now turns to Defendants' specific exhaustion of remedies arguments.

**1. Title VII and ADA Claims**

In order to exhaust administrative remedies for an ADA or Title VII claim, the plaintiff must not only file a timely charge with the EEOC or a relevant state agency, but also obtain a Notice of Right to Sue, also known as a right-to-sue letter, from the EEOC. *Chacko v. Office of N.Y. State Comptroller*, No. 20 Civ. 10697

(VEC), 2021 WL 5605063, at *2 (S.D.N.Y. Nov. 30, 2021) (Title VII); *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 192 (E.D.N.Y. 2016) (ADA); *see* 42 U.S.C. § 2000e–5(e)–(f) (Title VII exhaustion procedures); 42 U.S.C. § 12117(a) (ADA exhaustion procedures). Defendants argue that Calderon filed this action before obtaining a right-to-sue letter from the EEOC, mandating dismissal of her Title VII and ADA claims. (Def. Br. at 1, 9).[3]

Calderon responds that her inability to obtain the letters resulted from "EEOC dysfunction," not any lack of due diligence on her part, and that extraordinary circumstances warrant equitable relief excusing her from complying with the right-to-sue requirement. (Pl. Br. at 3–4). Calderon also argues that if the Court does find her Title VII and ADA claims to be premature, the appropriate remedy would be a stay or a dismissal without prejudice. (*Id.* at 5–6).

Here, the face of the Complaint reveals that the EEOC has not issued a right-to-sue letter to Calderon, so the Court can consider Defendants' argument for dismissal under Rule 12(b)(6). (*See* Compl. ¶ 13 (alleging that EEOC's issuance of a right-to-sue letter "has been delayed" and promising to supplement the Complaint with it "upon receipt")). According to Defendants, that should be the end of the matter. Quoting the statutory language and describing it as a "jurisdictional bar[]," Defendants argue that "[t]he statute does not provide any exception to the requirement for Plaintiff to wait until after she has received" the right-to-sue letter

[3] "Unlike Title VII and the ADA, the ADEA . . . 'does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court.'" *Kaba v. Hope Home Care*, No. 23-CV-9512 (OEM) (LB), 2024 WL 1679327, at *3 (E.D.N.Y. Apr. 18, 2024) (quoting *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 563 (2d Cir. 2006)); *see* 29 U.S.C. § 626(d)(1).

and that, consequently, her Title VII and ADA claims "must be dismissed." (Reply at 1, 2 (citing 42 U.S.C. § 2000e-5(f)(1)); *see also* 42 U.S.C. § 12117(a)).

But the matter is not as simple as Defendants would have it. Consistent with its case law cited above holding that exhaustion in this context generally is not a jurisdictional requirement, the Second Circuit has specifically and definitively held that "a plaintiff's failure to obtain a notice-of-right-to-sue-letter is *not* a jurisdictional bar, but only a precondition to bringing a[n] . . . action that can be waived by the parties or the court." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) (emphasis added). Thus, contrary to Defendants' argument, the mere fact that Calderon failed to obtain an EEOC right-to-sue letter before filing suit is not necessarily fatal to her Title VII and ADA claims.

"As the right-to-sue letter is only a statutory prerequisite, it is subject to equitable modification upon a showing by the plaintiff of sufficient reason." *Ishikawa v. City of New York Dep't of Cultural Affairs*, No. 91 Civ. 7269 (SWK), 1993 WL 362393, at *4 (S.D.N.Y. Sept. 14, 1993); *see also Klimovitsky v. JG Innovative Indus., Inc.*, No. 21 Civ. 755 (MKB), 2021 WL 5712120, at *4 (E.D.N.Y. Dec. 1, 2021) ("Failure to obtain a right-to-sue letter can be excused by the [c]ourt on equitable grounds."); *E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Loc. 580*, 139 F. Supp. 2d 512, 520 (S.D.N.Y. 2001) ("Noncompliance with the prerequisites of section 2000e-5 may be excused by equitable considerations."). And "[c]ourts regularly excuse the absence of EEOC right-to-sue

letters when plaintiffs have made diligent efforts to obtain such letters and when the failure to obtain such a letter is the fault of the agency, not the plaintiff." *Sughrim v. New York*, No. 19 Civ. 7977 (RA), 2022 WL 3447545, at *2 (S.D.N.Y. Aug. 17, 2022). The Court therefore must evaluate Calderon's argument that equitable considerations should excuse the absence of an EEOC letter.[4]

Calderon's argument that EEOC "dysfunction" is to blame for her filing suit without a right-to-sue letter, and that she had no choice but to proceed after "wait[ing] more than twenty months" (Pl. Br. at 1, 3, 4), is unpersuasive. First, it cannot be said that the EEOC improperly delayed taking action for "twenty months," or anything close to that, after Calderon's filing of administrative charges. Calderon sought to have her charges investigated in the first instance by the NYSDHR, not the EEOC. She was entitled to do this, but as a consequence, and in accordance with the EEOC's work-sharing agreement with the NYSDHR, the EEOC refrained from further action pending the outcome of the NYSDHR's administrative proceedings. (*See* Friedfel Decl. Ex. F at 32; Reply Friedfel Decl. Ex. A). *See* 7 Emp. Coord. Employment Practices § 84:15 (Sept. 2026 update) (noting that under EEOC's work-sharing agreements "[t]he agency that relinquishes initial processing

[4] As Defendants note (Reply at 3 n.1), Plaintiff incorrectly characterizes her argument as one of "equitable tolling." (Pl. Br. at 4). The doctrine of equitable tolling operates "to extend the statute of limitations beyond the time of expiration[.]" *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). Here, Defendants do not argue that the limitations period for Plaintiff's Title VII and ADA claims had expired at the time this suit was filed. The Court therefore construes Plaintiff's argument as based on the type of "equitable considerations," *Bridge, Structural & Ornamental Ironworkers*, 139 F. Supp. 2d at 520, that can excuse a failure to obtain a right-to-sue letter.

authority refrains from processing until the other agency completes its proceedings").

The NYSDHR did not complete its investigations and issue Determinations and Orders on Plaintiff's administrative complaints until July 2025. (Friedfel Decl. Exs. C, G). Calderon requested EEOC review of at least one of the NYSDHR's determinations on July 25, 2025. (Pl. Br. Ex. B at 3). The EEOC would not have issued a right-to-sue letter until after it had completed that review.[5] It is not clear from the record when (or even if) the EEOC completed its review. At a minimum, however, the EEOC could not have issued a right-to-sue letter until after the NYSDHR's determinations in July 2025, some three months—not twenty months—before Calderon commenced this action in October 2025.

Calderon attaches as Exhibit A to her brief a transcript of a telephone conversation between her counsel and an EEOC employee on February 5, 2026 (after the Complaint was filed). (*See* Pl. Br. at 4 n.2 (erroneously identifying the transcript as Exhibit B)). During that call, the EEOC employee noted that "[what's] supposed to happen is, is the state sends us a copy of that dismissal and *based on that, we issue the right to sue*." (Pl. Br. Ex. A at 2; emphasis added)). The transcript

[5] No party has submitted, nor has the Court found through its own research, the applicable work-sharing agreement between the EEOC and the NYSDHR or any rule or guidance establishing this process as the ordinary rule. Nonetheless, it is intuitively logical, and many cases attest that it is the ordinary practice. *See, e.g.*, *Rodriguez v. Wet Ink, LLC*, 603 F.3d 810, 813 (10th Cir. 2010) (noting that under relevant work-sharing agreement, "the EEOC reserves its authority to conduct a substantial weight review and then issue a right-to-sue notice terminating its jurisdiction"); cases cited in note 7, *infra*.

thus confirms that the EEOC had no obligation to issue a right-to-sue letter prior to the NYSDRL's determinations in July 2025, at the earliest.

Nor does it appear that Calderon made especially "diligent efforts," *Sughrim*, 2022 WL 3447545, at *2, to obtain a right-to-sue letter prior to filing the Complaint. Plaintiff's law firm appears to have first requested a right-to-sue letter on October 8, 2025. (Pl. Br. at 3 & Ex. B at 2–3). By that time, the federal government shutdown had begun. (*Id.*). Calderon then filed this action on October 27, 2025, not even three weeks later, while the EEOC remained shut down and before it had a chance to respond. (*Id.*). These circumstances hardly depict a situation where "the failure to obtain [the right-to-sue] letter is the fault of the agency, not the plaintiff." *Sughrim*, 2022 WL 3447545, at *2.

Calderon argues that she cannot be faulted for filing Title VII and ADA claims on October 27, 2025, despite the absence of a right-to-sue letter, because she "faced the choice of filing suit within the 90-day statute of limitations or risking time-barred claims while waiting indefinitely for an unresponsive agency." (Pl. Br. at 4). Calderon is mistaken. The 90-day period for filing Title VII or ADA claims begins to run from the plaintiff's receipt of the right-to-sue letter from the EEOC. *See, e.g.*, *Jackson v. Infitec, Inc.*, No. 15 Civ. 894 (GLS), 2018 WL 679474, at *2 (N.D.N.Y. Feb. 1, 2018) ("Title VII and the ADA require commencement of a civil action within 90 days of receipt of the EEOC's right-to-sue notice, and that time limit begins to run upon plaintiff's receipt of the right-to-sue notice and operates as a statute of limitations." (cleaned up)). Here, Plaintiff had *not* received a right-to-

sue letter. Thus, as the EEOC representative subsequently explained to Plaintiff's counsel, Plaintiff was not required to bring her Title VII and ADA claims by October 27, 2025. (*See* Pl. Br. Ex. A at 2 ("So, the deadline is ninety days from when you receive the notice of right to sue. So, if you haven't received [our] right to sue yet that ninety [day] deadline hasn't start[ed] running.")).[6]

Accordingly, the Court finds that Plaintiff has not established sufficient equitable grounds to excuse the lack of a right-to-sue letter when she decided to include Title VII and ADA claims in the Complaint she filed on October 27, 2025.

The Court recognizes that after filing the Complaint, Plaintiff's counsel took additional steps to obtain a right-to-sue letter, including in November 2025 and February 2026. (Pl. Br. at 4 & Ex. A). Yet Plaintiff still had not received the EEOC letter at the time she filed her opposition brief. (*See id.* at 4). Even as of today, the Court has not been informed that she received the letter. The question thus arises whether, at this point, the Court may look to these post-complaint developments and find sufficient equitable grounds to exist so as to permit Plaintiff's Title VII and ADA claims to proceed without an EEOC letter.

In some circumstances, courts have allowed claims to proceed on the basis of post-complaint events. In particular, courts in this Circuit have held that "where a

[6] To the extent Plaintiff was concerned that the statute of limitations might be running on other of her claims (though she does not express such a concern), that also would not have justified her bringing unexhausted Title VII and ADA claims prior to receiving a right-to-sue letter. Rather, in such a circumstance, there is an "easy solution" that a plaintiff can follow: the plaintiff "'may file suit on the non-Title VII claims and then *amend the complaint* to include the Title VII claim after receiving a right-to-sue letter.'" *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 336 (S.D.N.Y. 2021) (quoting *Sughrim*, 503 F. Supp. 3d at 95) (emphasis supplied by *Syeed*), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024); *see also Klimovitsky*, 2021 WL 5712120, at *5.

plaintiff has received a 'right to sue letter subsequent to commencement of a Title VII action' and while the federal action is still pending, the statutory exhaustion requirements have been met 'based on . . . equitable principles.'" *Brunson-Bedi v. New York*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *4 (S.D.N.Y. May 1, 2018) (quoting *Benzo v. N.Y. State Div. of Human Rights*, No. 95 Civ. 5362 (LAP), 1997 WL 37961, at *9 (S.D.N.Y. Jan. 31, 1997)); *see Sughrim*, 503 F. Supp. 3d at 95. That, to be sure, is not the situation here. Plaintiff still does not have a right-to-sue letter (or at least has not informed the Court that she has one). But arguably the same principle should apply where, instead of receiving a right-to-sue letter after filing the complaint, a plaintiff is unable to receive the letter despite diligent efforts to procure it after the filing of the complaint.

Assuming *arguendo* that such a scenario would present equitable grounds for excusing a plaintiff's failure to exhaust, the Court is unable to conclude that such relief is warranted at this juncture. The record remains murky both as to the degree of Plaintiff's diligence and as to the reasons why the EEOC did not issue a right-to-sue letter. Contrary to Plaintiff's assertion, the EEOC representative did not admit in counsel's February 5, 2026 call with him that the EEOC should have "automatically" issued a right-to-sue letter once the NYSDHR issued its determination on the dual-filed charge in July 2025. (Pl. Br. at 4 n.2). Nor did the EEOC representative promise that a right-to-sue letter would be immediately forthcoming; to the contrary, he simply asked counsel to email him the NYSDHR dismissal and said he would "follow up with the right people" at the EEOC. (Pl. Br.

Ex. A at 2). Plaintiff's brief states that counsel sent follow-up emails to the EEOC, but she does not provide copies of those documents.

Moreover, inasmuch as Calderon asked the EEOC to review the NYSDHR determination (Pl. Br. Ex. B at 3), the EEOC should *not* have "automatically" issued a right-to-sue letter following that determination. As noted above, when a claimant requests such a review, known as a "substantial weight review," the EEOC *first* conducts the review and *then* issues a right-to-sue letter. Plaintiff has provided no information about what happened to her request for EEOC review (nor has she clarified whether she sought EEOC review as to both NYSDHR determinations or only one). For all the Court knows, the EEOC review was ongoing as of the time of the briefing of the motion to dismiss, and it may still be ongoing today. Alternatively, the review process may have concluded and the EEOC may have, unbeknownst to the Court, issued a right-to-sue letter.[7]

All these facts are unclear. Also unclear, as the parties' briefs do not discuss it, is the legal regime governing the EEOC's procedures in a dual-filed situation like this one where a substantial weight review is requested, including what, if any, deadlines are imposed on the EEOC either by regulation or under the work-sharing agreement.[8] What *is* clear is that the Court cannot responsibly make a

---

[7] An EEOC substantial weight review may take some time. *See, e.g.*, *Collins v. Fox Home Ctr. Inc.*, No. 12 C 9555, 2014 WL 441427, at *3 (N.D. Ill. Feb. 4, 2014) (EEOC issued right-to-sue notice, following substantial weight review, more than seven months after state agency's dismissal of charges); *Lundquist v. Univ. of S. Dak. Sanford Sch. of Med.*, No. CIV 09-4147-RAL, 2011 WL 5326074, at *4 (D.S.D. Nov. 4, 2011) (seven and one-half months); *Skalafuris v. City of New York, Dep't of Corr.*, No. 09 Civ. 5165 (SAS), 2010 WL 4273286, at *1 (S.D.N.Y. Oct. 28, 2010) (nearly four months), *aff'd*, 437 F. App'x 54 (2d Cir. 2011).

[8] Plaintiff's brief does invoke the 180-day statutory period (running from the filing of an EEOC charge) after which the EEOC will issue a right-to-sue letter if it has not commenced a civil action.

determination on the present record that Plaintiff's failure to provide a right-to-sue letter should be excused based on equitable grounds.

Accordingly, Plaintiff's Title VII and ADA claims are dismissed, without prejudice, based on the Complaint's acknowledgement that no EEOC right-to-sue letter has been issued. Plaintiff may submit an amended complaint seeking to reinstate those claims based on a proper factual and legal showing, if she can make one.

### 2. Sex Discrimination Claim

Defendants argue that Calderon failed to exhaust her Title VII sex discrimination claim for an additional reason: she never presented that particular claim to the EEOC to begin with and it is not reasonably related to the claims she did present. (Def. Br. at 9–10). The Court agrees.

Although a plaintiff ordinarily must present a discrimination claim to the EEOC to satisfy the exhaustion requirement, the Second Circuit has recognized that "'claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the agency.'" *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d

(Pl. Br. at 5 (citing, but misquoting, 42 U.S.C. § 2000e-5(f)(1)). Plaintiff argues that the 180-day period "expired" long before she filed the Complaint in October 2025. (*Id.*). But her reliance on the 180-day period is misplaced. As discussed above, in a dual-filed situation where the EEOC defers to a state agency investigation, the EEOC awaits the conclusion of the state investigation before issuing a right-to-sue letter. Shortly after Calderon filed her first NYSDHR complaint, the EEOC advised her that *if* she did *not* want the NYSDHR to conduct an investigation, she could request a right-to-sue letter 180 days after she filed her complaint. (Reply Friedfel Decl. Ex. A at 2). Instead of following that path, Calderon elected to proceed with an NYSDHR investigation.

610, 614 (2d Cir. 1999)). "Conduct is reasonably related to conduct in an EEOC charge if: '[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23 Civ. 7408 (KMK), 2025 WL 863572, at *5 (S.D.N.Y. Mar. 18, 2025) (quoting *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002)).

Neither of Calderon's NYSDHR's complaints alleged that she was discriminated against on the basis of her sex. In the opening paragraph of both complaints, Calderon set forth the nature of her employment discrimination charges. In the August 2023 complaint, she alleged discrimination "because of age, disability, race/color, predisposing genetic characteristic, [and] opposed discrimination/retaliation." (Friedfel Decl. Ex. B at 2). In the December 2023 complaint, she alleged discrimination "because of age, disability, race/color, [and] opposed discrimination/retaliation." (*Id.* Ex. E at 5).[9] Each complaint attached a complaint form that included a "Basis of alleged discrimination" section asking the filer to check all applicable boxes. Calderon checked the boxes labeled "Age,"

[9] Further down on the same page, Calderon stated (in both complaints) that, in addition to alleging violations of the NYSHRL, she was also charging respondents "with violating Title VII of the Civil Rights Act of 1964, as amended (*covers* race, color, creed, national origin, *sex* relating to employment)." (Friedfel Decl. Ex. B at 2 & Ex. E at 5 (emphasis added)). Considered in the context of the opening paragraph and the remainder of the complaints, this parenthetical reference to "sex" is best understood to describe what Title VII "covers" generally, as opposed to an allegation that Calderon was the victim of sex discrimination. That reading is also supported by the parenthetical's reference to "creed," a form of discrimination covered by Title VII that Calderon has never contended is part of her complaints.

"Disability," "Race/Color," "Retaliation," and (for the August 2023 complaint only) "Predisposing Genetic Characteristic." She did *not* check the box labeled "Sex" in either complaint form. (*Id.* Ex. B at 4 and Ex. E at 7).

Calderon claims that she *did* allege sex discrimination, but the record contradicts that claim. Calderon's brief asserts that "Plaintiff checked the 'Sex' box on her EEOC charge filed January 24, 2024." (Pl. Br. at 9). But it does not provide a citation to the Complaint or the exhibits submitted on this motion supporting this assertion, and the Court cannot find in these materials any reference to an "EEOC charge" that Calderon "filed" on January 24, 2024. Instead, the Complaint refers only to Plaintiff's charges filed with the NYSDHR on August 17, 2023 and December 29, 2023, which were dual-filed with the EEOC. (Compl. ¶¶ 10–11). Moreover, the Complaint describes Plaintiff's NYSDHR complaint as alleging discrimination and retaliation "based on race, color, national origin, age, and disability, as well as failure to accommodate and hostile work environment" (*id.* ¶ 12)—not discrimination based on sex. The record does include a notice issued *by* the EEOC to Defendants dated January *25*, 2024, but that notice contains no boxes checked by Calderon and no indication that Calderon had made an allegation of sex discrimination. To the contrary, the notice identifies the bases for Calderon's discrimination claims as "Age, Disability, Race/Color, Opposed Discrimination/Retaliation." (Friedfel Decl. Ex. F at 32).[10]

[10] The EEOC notice provided to Columbia in connection with Calderon's August 2023 NYSDHR complaint similarly identifies the bases for her discrimination claims as "Age, Disability, Race/Color, Predisposing Genetic Characteristic, Opposed Discrimination/Retaliation," without mentioning sex discrimination. (Reply Friedfel Decl. Ex. A).

Similarly, and with equal lack of citation, Calderon's brief asserts that the NYSDHR Determinations and Orders state that her complaint alleged discrimination "because of . . . sex." (Pl. Br. at 9). The Court has reviewed both NYSDHR orders and finds in them no such language, or indeed any reference to sex. To the contrary, the orders state expressly that what Calderon alleged and what the NYSDHR investigated was discriminatory practices based on "age, disability, race/color, predisposing genetic characteristic [and] opposed discrimination/retaliation" (in the case of the order relating to the August 2023 complaint) and ""age, disability, race/color, [and] opposed discrimination/retaliation" (in the case of the order relating to the December 2023 complaint). (Friedfel Decl. Ex. C at 2, 5 & Ex. G at 2, 5).

Calderon also argues that she satisfies the exhaustion requirement because, during the NYDSHR investigation, her counsel submitted a rebuttal to Defendants' position statement that expressly argued that she was discriminated against based on her sex. (Pl. Br. at 9–10; *see* Friedfel Decl. Ex. F at 160–66 (rebuttal statement)). But "courts regularly refuse to consider affidavits or unsworn rebuttals that aim to 'enlarge the scope of the charge to encompass new unlawful employment practices or bases for discrimination.'" *Hamilton*, 2025 WL 863572, at *7 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001)). Rather, "the Second Circuit has instructed courts to 'focus' on 'the factual allegations made in the EEOC charge itself[.]" *Parker v. Isr. Disc. Bank of N.Y., Inc.*, No. 21 Civ. 7196 (VEC), 2022 WL 16833626, at *3 n.4 (S.D.N.Y. Nov. 9, 2022) (quoting *Deravin v. Kerik*, 335 F.3d 195,

201 (2d Cir. 2003)). The factual allegations made in Calderon's NYSDHR complaints do not mention sex discrimination. (*See* Friedel Decl. Exs. B & E).

Accordingly, Calderon's references to sex discrimination in her rebuttal do not salvage her claim. *See Hamilton*, 2025 WL 863572, at *7 ("The Court does not consider [p]laintiff's 'Rebuttal to the Employers' Position Statement' in the above analysis."); *Parker*, 2022 WL 16833626, at *3 n.4 (similarly disregarding plaintiff's EEOC rebuttal statement in exhaustion analysis). The Court thus concludes that Calderon did not present her sex discrimination claim to the NYSDHR.

The Court also concludes that Calderon's sex discrimination claim is not "reasonably related" to her administrative claims. "A claim is not 'reasonably related' when it is based on 'a wholly different type of discrimination' than the one alleged before the EEOC." *Thompson v. Collins*, No. 22 Civ. 4732 (EK), 2025 WL 2962734, at *3 (E.D.N.Y. Oct. 21, 2025) (quoting *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)); *see also Quirino v. The New Jewish Home*, No. 19 Civ. 5778 (PAE) (DF), 2021 WL 11430534, at *9 (S.D.N.Y. Dec. 29, 2021) ("[C]ourts have held that a claim alleging discrimination upon a protected classification that is different than the protected classification set forth in the EEOC charge is not reasonably related." (quotation omitted)), *R&R adopted*, 2022 WL 142373 (S.D.N.Y. Jan. 14, 2022).

Such is the case here: a claim of sex discrimination is a wholly different type of discrimination than age, disability, or racial discrimination. The former is not reasonably related to the latter. *See, e.g., Thompson*, 2025 WL 2962734, at *3

(finding federal court claims of race, disability, and veteran-status discrimination were not "reasonably related" to EEOC complaints of sex discrimination and retaliation); *Udoh v. N.Y.C. Dep't of Probation*, No. 24 Civ. 3982 (ER), 2025 WL 2199613, at *4–5 (S.D.N.Y. Aug. 1, 2025) (dismissing Title VII sex discrimination claim for failure to exhaust administrative remedies and finding that such a claim was not "reasonably related" to plaintiff's EEOC claims alleging race, national origin, and disability discrimination and retaliation).

Further, the mere fact that Calderon's second NYSDHR complaint alleged that she, a female, was discriminated against by Duong, a male, is insufficient to satisfy the "reasonably related" test. *See, e.g.*, *Udoh*, 2025 WL 2199613, at *5 (finding that male plaintiff's reference in his EEOC charge to being replaced by a female officer "is insufficient to give the EEOC adequate notice to investigate a sex discrimination claim"); *Hamilton*, 2025 WL 863572, at *5 ("The mere fact that [p]laintiff [who alleged religious and sex discrimination in his EEOC charge] mentioned he was a Caribbean American is insufficient to give the EEOC adequate notice to investigate a claim of race and/or national origin discrimination"); *Parker*, 2022 WL 16833626, at *3 ("Plaintiff's argument boils down to: she identified herself as a woman and the supervisor she accuses of discriminatory conduct is a man and therefore the EEOC was on notice that she was complaining about sex discrimination. Caselaw firmly establishes that such passing references to gender are inadequate." (citing cases)).

Calderon argues that the claims are reasonably related because her administrative complaints "described a pattern of hostile treatment, differential terms and conditions of employment, and retaliatory conduct" and that an investigation into these allegations "would reasonably encompass whether sex-based animus motivated the challenged conduct." (Pl. Br. at 10). But this argument is premised on Calderon's assertion that "sex discrimination was expressly checked" on her "EEOC form" (*id.* at 10–11), and as shown above, that assertion is factually incorrect. Certainly, alleging a "pattern" of "hostile" and "differential" treatment does not provide reasonable notice to investigate whether the conduct was motivated by sex-based animus where the claimant alleges that the conduct was motivated by *other* forms of animus, such as age, disability, and racial animus, which is what Calderon alleged in her NYSDHR complaints here.

Accordingly, the Court finds that Calderon did not exhaust administrative remedies with respect to her Title VII sex discrimination claim. Therefore, even if Calderon is able to successfully replead a Title VII claim despite not having a right-to-sue letter, that claim cannot be predicated on allegations of sex discrimination.

**3. ADEA Claim**

Defendants' ADEA exhaustion argument fares less well.

In contrast to her sex discrimination claim, Calderon explicitly alleged age discrimination in both of her NYSDHR complaints. (Friedfel Ex. B at 2, 4 & Ex. E at 5, 7). As a result, Defendants do not claim that Calderon failed to exhaust her ADEA claims in their entirety. Instead, Defendants argue that Calderon failed to

exhaust her ADEA claims to the extent they are based on factual allegations post-dating December 29, 2023—when Plaintiff filed her second NYSDHR complaint—while acknowledging that she may proceed with the claims to the extent they are based on the factual allegations contained within her NYSDHR complaints. (Def. Br. at 1, 10–11; Reply at 5 n.5).

"'The exhaustion requirement applies not only to causes of action but also to underlying factual allegations.'" *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 439 (S.D.N.Y. 2023) (quoting *Fanelli v. N.Y.*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014)). Thus, "underlying factual allegations that differ from those in an EEOC charge are routinely analyzed separately for exhaustion purposes in the Second Circuit." *Id.* Here, Defendants argue that two sets of factual allegations underlying Calderon's ADEA claims were not exhausted: (1) Duong's alleged remarks about her "menopausal mood swings" in January 2025, and (2) her demotion and the reassignment of her job duties to "employees more adaptable with technology" in February 2025. (Def. Br. at 10; *see* Compl. ¶¶ 45, 47).

The parties dispute whether these allegations are "reasonably related" to Calderon's NYSDHR complaints for exhaustion purposes. (*See* Def. Br. at 10–11; Pl. Br. at 7–9). As noted above, under the first and third prongs of that test, conduct may be deemed reasonably related where it "would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination" or it involves "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano*, 294 F.3d at 381

(quotation omitted).[11] Calderon argues that her January and February 2025 age-related allegations are part of "a single course of discrimination" premised on differential treatment due to her age, "fall squarely within the scope of the administrative charge," and thus are "reasonably related" to the allegations made in her complaints. (Pl. Br. at 7–9). The assessment of such a claim is not governed by any "*per se* rule," but "is instead one intimately connected to the facts," requiring the court to "closely examin[e]" the allegations in both the EEOC complaint and the federal court complaint. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006).

As Defendants acknowledge, in her NYSDHR complaints, Plaintiff made "age-related allegations" pertaining to her "laptop and technology malfunctions" (Def. Br. at 10). She described the alleged discriminatory acts to include: being given "a disciplinary notice or negative performance review," being given "different or worse job duties than other workers doing the same job," and "harass[ment] or intimidat[ion]." (Friedfel Ex. B at 5 & Ex. E at 8). Duong was prominently featured and named as a respondent in Calderon's second complaint, and was also mentioned in her first complaint. (Friedfel Ex. B at 7 & Ex. E at 5–6, 9–12).

Considering Calderon's post-charge allegations concerning her demotion and the reassignment of her functions in February 2025 in light of the age-related

[11] Under the second prong of the test, conduct is reasonably related if it alleges "retaliation for filing the EEOC charge." *Id.* For this prong to apply, "the plaintiff must allege specific linkage between the filing of an EEO charge and the acts of retaliation about which he complains." *Daigle v. West*, 225 F. Supp. 2d 236, 242 n.13 (N.D.N.Y. 2002); *see Kirkland-Hudson*, 665 F. Supp. 3d at 441. Calderon does not argue that there is a specific linkage between her 2023 complaints and the events of January and February 2025 or rely on this prong of the reasonably related test.

discrimination claims in her NYSDHR complaints, the Court finds that those allegations satisfy the "same manner" prong of the "reasonably related" test. "A same-manner incident post-dating the filed EEOC charge falls within 'the values associated with exhaustion . . . because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents.'" *Quintyne v. Daly*, No. 25 Civ. 4865 (JLR), 2026 WL 2568922, at *9 (S.D.N.Y. Aug. 31, 2026) (quoting *Kirkland-Hudson*, 665 F. Supp. 3d at 442). "Courts have found that new misconduct meets this standard where it evinces the same overall discriminatory purpose or end and is carried out using the same means as the previous misconduct contained in the EEOC charge." *Kirkland-Hudson*, 665 F. Supp. 3d 442. "Where pre-and post-charge incidents involve similar facts, the 'reasonably related' inquiry turns on the degree of similarity," *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 394 (E.D.N.Y. 2014), and the term "precisely" should not be construed "too narrowly," *Hinton v. City Coll. of N.Y.*, No. 05 Civ. 8951 (GEL), 2008 WL 591802, at *14 (S.D.N.Y. Feb. 29, 2008) (Lynch, J.).

Here, Calderon's February 2025 allegations, like her age-related allegations in her NYSDHR complaints, arise from her use of technology and her claim that Defendants discriminated against her because of a perception that she was too old to understand how to use technology properly. She asserts that as a result, she was "reassigned to lower-level clerical work" in February 2025 (Compl. ¶¶ 47–48), echoing her earlier charge that she was given "different or worse job duties"

(Friedfel Ex. B at 5). And while the Complaint does not specifically allege that Duong orchestrated the reassignment, it is reasonable to infer that he was a key participant, since he was Calderon's supervisor. Moreover, Calderon alleges the reassignment occurred one day after she complained about Duong's purportedly ageist and sexist remarks, and after Duong had continued to ignore her need for updated ergonomic tools throughout 2024. (*See* Compl. ¶¶ 43, 45–47).

Calderon's pre- and post-charge age discrimination allegations share a high degree of similarity, describing a continuing course of conduct involving essentially the same means of discrimination. That is sufficient to satisfy the reasonable relationship test. *See, e.g.*, *Almendral v. N.Y. State Off. of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984) (finding additional allegations "reasonably related" to EEOC charge where "defendants' alleged subsequent acts are essentially the same as the earlier allegedly wrongful conduct"); *Quintyne*, 2026 WL 2568922, at *9 (finding that post-charge conduct was "reasonably related to the course of conduct" set forth in plaintiff's EEOC charges, as both involved same supervisor and others attempting to force plaintiff out of job for discriminatory reasons); *Kirkland-Hudson*, 665 F. Supp. 3d at 443 (finding that post-charge "allegations that [p]laintiff was excluded from meetings and emails are reasonably related to [p]laintiff's EEOC allegation that she was prevented from attending a union meeting"); *DeBerry*, 11 F. Supp. 3d at 396 (finding discrimination allegations reasonably related where they involved "the same decisionmakers" and "the same end-result").

Duong's alleged ageist remarks about Calderon's "menopausal mood swings" also satisfy this test. Although Calderon's NYSDHR's complaints did not allege any similar ageist comments by Duong, they did allege that he and others had harassed or intimidated Calderon based on, *inter alia*, her age. (Friedfel Ex. B at 5 & Ex. E at 8). Moreover, Calderon appears to include this allegation in the Complaint not as the basis for a claim of age discrimination, but "to amplify and support" her properly exhausted age discrimination claims. *DeBerry*, 11 F. Supp. 3d at 396. Such additional factual allegations "are not barred by the exhaustion rules." *Id.* Indeed, a rule requiring every post-charge discriminatory remark to be presented to the EEOC before it could be used in a federal court litigation would make little sense. *See Hinton*, 2008 WL 591802, at *14 (cautioning against "requir[ing] the victim to file repeated EEOC charges and repeated separate lawsuits").

The Court is not persuaded by Defendants' arguments to the contrary. Defendants suggest that "the basis for [Calderon's] age discrimination claim" before the NYSDHR was that she received unwanted communications about an Alzheimer's study. (Reply at 5). But that is simply not the case, as Defendants themselves acknowledge (*see* Def. Br. at 10 (stating that "Plaintiff's age-related allegations [in her NYSDHR complaints] pertained to her laptop and technology malfunctions")) and as the NYSDHR orders make clear (*see* Friedfel Decl. Ex. C at 5 (discussing Calderon's age-related claims in the context of her "laptop and desktop issues" without mentioning the Alzheimer's study); Ex. G at 5 (also discussing Calderon's age-related claims in the context of her "laptop and desktop issues")).

Defendants also argue that the Complaint "is the first time [Calderon] is bringing up the issue of a position restructure and 'demotion'" (Def. Br. at 10), but as noted above, the demotion involved undesirable work assignments and Calderon previously complained she was being given undesirable work assignments.

Defendants rely heavily on the Second Circuit's decision in *Spillers v. N.Y.C. Health & Hosps. Corp.*, 763 F. App'x 138 (2d Cir. 2019), calling it "directly on point." (Reply at 6; *see* Def. Br. at 10). But *Spillers* is easily distinguishable. In that case, the plaintiff's EEOC complaint alleged disability discrimination, but did not include any claim for failure to accommodate; it did not even indicate that the plaintiff sought any accommodation for his disability, even though the complaint form invited him to do so. *Spillers*, 763 F. App'x at 139. The Second Circuit thus upheld the district court's determination that the failure to accommodate claim was not reasonably related to plaintiff's EEOC charge. *Id.* That is unsurprising, since a failure to accommodate theory is an entirely distinct claim under the ADA. *See Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (noting that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA"). By contrast, Calderon's additional factual allegations supporting her ADEA claims do not present a new or different theory of relief from the claims made in her NYSDHR complaints.

Accordingly, the Court declines to dismiss Plaintiff's post-December 29, 2023 allegations supporting her ADEA claims for failure to exhaust her administrative remedies.

**B. Election of Remedies**

Next, Defendants argue that Calderon's NYSHRL and NYCHRL claims are barred by the election of remedies doctrine "insofar as they are based on the same factual allegations already adjudicated by the NYSDHR" in its Determinations and Orders. (Def. Br. at 11). As Defendants clarified in their reply brief, after Plaintiff pointed out that "the election of remedies doctrine does not apply to conduct occurring after the filing of an NYSDHR complaint" (Pl. Br. at 11), Defendants do not seek dismissal of Plaintiff's NYSHRL and NYCHRL claims in their entirety. Rather, they only seek dismissal of the claims to the extent they are "based on conduct pre-dating December 29, 2023." (Reply at 6).

Under the NYSHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. Exec. L. § 297(9). "Thus, 'claims, once brought before the [NYSDHR], may not be brought again as a plenary action in another court,' and any appeal from the [NYSDHR's] determinations may be brought only in New York Supreme Court." *Gibson v. Trs. of Columbia Univ. in City of New York*, No. 25 Civ. 3156 (JLR), 2026 WL 114861, at *4 (S.D.N.Y. Jan. 15, 2026) (quoting *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir.

2002)), *appeal dismissed* (Mar. 23, 2026). "This rule, known as the doctrine of election of remedies, 'will bar any subsequent court proceedings,' '[s]o long as substantially the same facts are involved[.]'" *Quintyne*, 2026 WL 2568922, at *6 (quoting *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 666–67 (E.D.N.Y. 2015)). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011).

"The NYCHRL contains an election of remedies clause analogous to that of the NYSHRL[.]" *McPherson v. Plaza Athenee, NYC,* 12 Civ. 785 (AJN), 2012 WL 3865154, at *4 (S.D.N.Y. Sept. 4, 2012). Under the NYCHRL, any person aggrieved by an unlawful discriminatory practice or act of discriminatory harassment in violation of that law likewise "shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment[.]" N.Y.C. Admin. Code § 8–502(a). This language, "nearly identical" to that of Exec. L. § 297(9), "bars a person who has filed a complaint with either the city human rights agency or the [NYSDHR] from filing a plenary judicial action under the [NY]CHRL as well." *York v. Ass'n of Bar of City of New York*, No. 00 Civ. 5961 (DC), 2001 WL 776944, at *5 (S.D.N.Y. July 11, 2001), *aff'd sub nom. York*, 286 F.3d 122.

Here, Calderon filed both her August 2023 and December 2023 complaints with the NYSDHR, alleging that Defendants engaged in unlawful discriminatory

practices in violation of the NYSHRL. (Friedfel Decl. Exs. B & E). She was advised that her complaints would be investigated by the NYSHRL. (*Id.* Ex. F at 27, 33; Reply Friedfel Decl. Ex. A at 2). The NYSHRL proceeded to investigate her claims. (*See* Friedfel Decl. Ex. C at 2; Ex. F at 174–82; Ex. G at 2). Following its investigation, the NYSHRL then issued Determinations and Orders dismissing Calderon's claims based on its findings that there was no probable cause to support the claims. (*Id.* Exs. C & G).

Despite having elected to submit her claims to the NYSDHR for resolution, Calderon now seeks to bring a federal court action asserting claims under the NYSHRL and NYCHRL that rely, in substantial part, on the same pre-December 29, 2023 factual allegations set forth in her NYSDHR complaints and resolved against her by the NYSDHR. (*See* Compl. ¶¶ 19–39, 112, 120, 126, 134, 142, 149). That is precisely what the election of remedies doctrine prohibits. To the extent based on pre-December 29, 2023 conduct, both her NYSHRL and NYCHRL claims are clearly barred. *See, e.g.*, *Gibson*, 2026 WL 114861, at *5 ("Plaintiff has filed, in this Court, claims under the NYSHRL that he already brought before the Division, that rely on identical factual assertions, and that the Division dismissed on the merits."); *Saunders v. N.Y.C. Dep't of Educ.*, No. 07 Civ. 2725 (SJF), 2010 WL 2816321, at *9 (E.D.N.Y. July 15, 2010) ("Since the NYSDHR investigated and ruled on the merits of [the] plaintiff's complaints in that forum, the election of remedies doctrine precludes [the] plaintiff from pursuing her NYSHRL and NYCHRL claims arising from those same allegations in this [c]ourt."); *McNulty v.*

*N.Y.C. Dep't of Fin.,* 45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999) ("Having elected to pursue redress for [his] grievances before the [NYSDHR], [p]laintiff is now foreclosed from bringing either [NYSHRL or NYCHRL] claims before this [c]ourt."); *see also Higgins,* 836 F. Supp. 2d at 188 ("The election of remedies bar . . . precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which [plaintiff's] [NYSDHR] complaint was based.").

In claiming that the election of remedies doctrine does not bar her NYSHRL and NYCHRL claims even to the extent they are based on her pre-December 29, 2023 allegations, Calderon makes two arguments. (*See* Pl. Br. at 12–13). Each argument is devoid of merit.

First, Calderon argues that the election of remedies doctrine "does not apply where the NYSDHR filing resulted from automatic dual-filing through the EEOC." (*Id.* at 12). Her brief states: "As the NYSDHR determination letter confirms, Plaintiff's complaint 'was initially filed with the U.S. Equal Employment Opportunity Commission.'" (*Id.*). Under such circumstances, Plaintiff argues, "dual-filing is not a voluntary election" and hence "does not trigger the election bar." (*Id.*).

Plaintiff's argument relies on a real exception to the election of remedies doctrine recognized by case law. *See, e.g.*, *Rasmy v. Marriott Int'l, Inc.*, No. 16 Civ. 4865 (AJN), 2017 WL 773604, at *5 (S.D.N.Y. Feb. 23, 2017) (noting that discrimination charges "submitted to the EEOC in the first instance before being

'dual filed' with the NYSDHR" are "exempt[ed] [] from the election of remedies bar"). Unfortunately, the factual predicate for the argument is fictitious. Plaintiff's NYSDRH complaints were *not* "initially filed with" the EEOC. Despite putting that phrase in quotation marks, Plaintiff's brief provides no citation for it, and the Court can find it nowhere in the material before it. To the contrary, the materials before the Court—including Plaintiff's own Complaint—establish unambiguously that Calderon filed both of her administrative complaints *with the NYSDHR*, not the EEOC. (*See, e.g.*, Compl. at 10, 12; Friedfel Decl. Exs. B & E).

In other words, Plaintiff's characterization of the facts in her brief turns the truth upside down: her complaints were *first* filed with the NYSDHR, and *then* dual-filed with the EEOC, not the other way around. Under that scenario, the election of remedies doctrine applies with full force. *See, e.g.*, *Williams v. Samaritan Daytop Vill. Woodside Senior Ctr.*, No. 23 Civ. 10323 (JLGC) (VF), 2025 WL 850547, at *10 (S.D.N.Y. Jan. 29, 2025) (election of remedies doctrine barred plaintiff's NYSHRL claims where "[p]laintiff filed his complaint directly with the NYSDHR, not the EEOC," and complaint was then dual-filed with the EEOC by the NYSHRL), *R&R adopted*, 2025 WL 836834 (S.D.N.Y. Mar. 14, 2025); *Rasmy*, 2017 WL 773604, at *5 (claims in complaint that was filed "directly with the NYSDHR in the first instance" were "subject to the bar established by the election of remedies provisions of the NYSHRL and NYCHRL"); *Dixon v. Krasdale Foods, Inc.*, No. 13 Civ. 3045 (CM), 2013 WL 6334439, at *2 (S.D.N.Y. Dec. 4, 2013) (when plaintiff filed

NYSDHR complaints, dual-filed with the EEOC, he "elected his remedies and waived his right to bring a subsequent lawsuit on his state-and city-law claims").

Second, Calderon argues that a "no probable cause" finding by the NYSDHR is merely "an investigatory determination, not a final adjudication following a full and fair opportunity to litigate," and that the NYSDHR proceedings "therefore cannot be deemed adjudications 'on the merits' for purposes of the election of remedies doctrine." (Pl. Br. at 12–13). But courts in this Circuit have consistently rejected this argument. As one court explained when a plaintiff similarly "trie[d] to reframe the election-of-remedies standard as one whose fundamental focus is on whether she had a full and fair opportunity to litigate her claims" before the NYSDHR: "[T]hat is not the standard. In fact, whether or not [plaintiff] had such an opportunity, the election-of-remedies doctrine applies and her [NY]SHRL and [NY]CHRL claims must be dismissed pursuant to Rule 12(b)(1)." *Forman v. City of New York*, No. 14 Civ. 6282 (LTS), 2017 WL 1167334, at *6 (S.D.N.Y. Mar. 27, 2017); *accord, e.g.*, *Naula v. N.Y.C. Dep't of Educ.*, No. 24 Civ. 333 (NRM), 2025 WL 948100, at *3 (E.D.N.Y. Mar. 30, 2025); *Centeno v. 75 Lenox Realty LLC*, No. 14 Civ. 1916 (DLI) (LB), 2017 WL 9482090, at *19 n.36 (E.D.N.Y. Feb. 1, 2017) ("The election of remedies doctrine is distinct from collateral estoppel as the determination of whether plaintiff's claims are barred due to the election of remedies turns solely on the filing of the administrative complaint and not whether plaintiff had a full and fair opportunity to litigate."), *R&R adopted*, 2017 WL 1214451 (E.D.N.Y. Mar. 31, 2017).

Notably, the sole case cited by Calderon in support of her argument is *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001), which did not address the election of remedies doctrine at all. Instead, that decision considered whether a no probable cause finding by the NYSDHR had *collateral estoppel* effect on a plaintiff's subsequently asserted federal claims. *See id.* at 727–36. And indeed, Plaintiff relies on *Kosakow* later in her brief in countering Defendants' collateral estoppel argument. (Pl. Br. at 13; *see* Discussion § C, *infra*). This Court accordingly joins other courts in finding *Kosakow* to be inapposite to the issue of election of remedies presented here. *See Centeno*, 2017 WL 9482090, at *19 n.36; *DeBerry*, 11 F. Supp. 3d at 392 n.3.

The NYSHRL provides for exceptions to the election of remedies bar where the NYSDHR dismisses the complaint "'on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled.'" *Adams v. City of New York*, No. 23 Civ. 6637 (LTS), 2023 WL 6608931, at *2 (S.D.N.Y. Oct. 10, 2023) (quoting N.Y. Exec. L. § 297(9)); *see also* N.Y. Admin. Code § 8-502(a) (setting forth similar exceptions). But Calderon does not claim that any of these exceptions apply here. Where, as here, those exceptions are inapplicable, and the NYSDHR dismisses a complaint following a finding of "no probable cause," a federal court may not entertain the plaintiff's NYHRL and NYCHRL claims. *See, e.g.*, *Suarez v. N.Y. Cnty. Dist. Attorney's Off.*, No. 22 Civ. 10855 (PGG) (OTW), 2025 WL 894516, at *10 (S.D.N.Y. Mar. 24, 2025); *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 700–01 (W.D.N.Y.

2018); *Smith-Henze v. Edwin Gould Servs. for Child. & Fams., Officers & Emps.*, No. 06 Civ. 3049 (LBS), 2006 WL 3771092, at *3 (S.D.N.Y. Dec. 21, 2006); *Blackmon v. UNITEA*, No. 03 Civ. 9214 (GWG), 2005 WL 2038482, at *15 (S.D.N.Y. Aug. 25, 2005).

Accordingly, as the election of remedies bar plainly applies, and as Defendants concede it does not apply to post-December 29, 2023 conduct, the Court concludes that Plaintiff's NYSHRL and NYCHRL claims must be dismissed to the extent they are based on allegations of conduct occurring prior to December 29, 2023, but not otherwise.

### C. *Res Judicata* and Collateral Estoppel

Next, Defendants argue that Plaintiff's claims under Section 1981 should be dismissed at this stage pursuant to *res judicata* and collateral estoppel. (Def. Br. at 13–14). The Court rejects this argument as premature.

"[A] court may consider a *res judicata* or collateral estoppel defense on a Rule 12(b)(6) motion to dismiss 'when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.'" *Ramsaroop v. Dep't of Educ. of City of New York*, No. 20 Civ. 4947 (ER), 2022 WL 376029, at *3 (S.D.N.Y. Feb. 8, 2022) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014)); *see also Almazon v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 4871 (VEC), 2020 WL 1151313, at *6 n.14 (S.D.N.Y. Mar. 9, 2020) (because preclusion "'is not a jurisdictional matter,'" defendant's "*res judicata* and collateral estoppel arguments are . . . properly

considered under Rule 12(b)(6), not Rule 12(b)(1)" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005))).

At the outset, although Defendants label this heading of their brief as making arguments "under *res judicata* and collateral estoppel," their argument makes no mention of *res judicata*. (Def. Br. at 13–14). Plaintiff's brief similarly discusses only collateral estoppel, invoking only cases and concepts from that method of preclusion (Pl. Br. at 13–14), and Defendants' reply does the same (Reply at 8–9). Accordingly, the Court does not consider *res judicata* here and limits its analysis to collateral estoppel.

In the context of an employment discrimination claim under Section 1981, the Supreme Court has held that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (cleaned up).[12] When evaluating the preclusive effect of a NYSDHR proceeding, federal courts follow the New York Court of Appeals' rule that "there must be an 'identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and the party to be estopped must have had a 'full and fair opportunity to contest the decision now said

---

[12] This is true even where, as here, the agency action has not been reviewed or affirmed by a state court. *Jeter v. N.Y.C. Dep't of Educ.*, 549 F. Supp. 2d 295, 304 (E.D.N.Y. 2008). By contrast, for claims asserted under Title VII, the ADA, and the ADEA, unreviewed agency determinations are not given preclusive effect, as "Congress [has] specifically indicated that unreviewed administrative agency findings [are] only entitled to 'substantial weight'" in those contexts. *McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14 Civ. 9516 (CM), 2016 WL 10683305, at *7 (S.D.N.Y. June 17, 2016).

to be controlling.'" *Kosakow*, 274 F.3d at 730 (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 246 N.E.2d 725, 298 N.Y.S.2d 955, 960 (1969)). "The party seeking to invoke collateral estoppel has the burden of showing the identity of the issue, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate." *Bonner v. Lynott*, 203 A.D.3d 1526, 166 N.Y.S.3d 325, 331 (3d Dep't 2022).

Defendants argue that Calderon's Section 1981 claims are barred in full because her allegations "stem from" the same incidents underlying her NYSDHR claims, the parties involved are the same, and the NYSDHR "provided Plaintiff with a full and fair opportunity to litigate her claims." (Def. Br. at 13–14). Defendants assert that the NYSDHR investigated Plaintiff's claims, considered the evidence provided, including a rebuttal submitted by Plaintiff's counsel, spoke with a witness Plaintiff identified, and found no probable cause for her claims. (*Id.* at 14; *see also* Reply at 9). Accordingly, Defendants argue that "Plaintiff's Section 1981 claims should be dismissed with prejudice as precluded by the NYSDHR's investigation and subsequent dismissal of Plaintiff's race discrimination complaints." (Def. Br. at 14).

Calderon does not dispute that the NYSDHR proceedings involved the same issues she raises here, instead arguing that she "was not afforded a 'full and fair opportunity to litigate' before the NYSDHR." (Pl. Br. at 13).[13] Calderon asserts

[13] Despite this, there is reason to doubt whether the "identity of issues" prong is met in this action. Calderon alleges unlawful racially-motivated conduct which post-dates the second NYSDHR complaint's filing, conduct which at least raises a question as to whether her present Section 1981 claim mirrors her racial discrimination claims at the NYSDHR. For example, Plaintiff alleges that

that although her counsel submitted a rebuttal in one matter and the NYSDHR investigated a witness she identified (*see also* Friedfel Decl. Ex. F at 188), she herself was never interviewed and there was no hearing, no discovery, and no opportunity for Plaintiff to present testimony or cross-examine witnesses. (Pl. Br. at 13–14). Accordingly, Plaintiff argues that the NYSDHR's determination, "based primarily on written submissions and a one-sided witness interview, without even obtaining testimony from the complainant, cannot constitute a 'full and fair opportunity to litigate.'" (*Id.* at 14).

Both parties' arguments presuppose that the record currently before the Court is sufficient to permit a determination that Calderon did, or did not, have a "full and fair opportunity" to litigate her claims before the NYSDHR. The Court does not share that assumption.

In considering whether to give preclusive effect to an unreviewed NYSDHR determination, the Second Circuit has emphasized, consistent with the New York law of collateral estoppel, the need to explore various factors which make up "the realities of" the agency proceeding. *Kosakow*, 274 F.3d at 734 (quoting *Schwartz*, 298 N.Y.S.2d at 961). These factors, as articulated by the New York courts in the

---

throughout 2024, following her second NYSDHR complaint, she was subjected to adverse treatment reflective of "a broader pattern in which women of color, and particularly Latina employees, were marginalized within [her] department and denied professional visibility." (Compl. ¶ 43). Around this time, a fellow Latina coworker was demoted and reassigned, which Plaintiff alleges "reinforced a recurring pattern in which Latina employees were set up to fail by being overburdened or denied proper support, while advancement opportunities were ultimately given to non-Latino counterparts." (*Id.* ¶ 44). This was followed by Plaintiff's own demotion shortly thereafter (*id.* ¶ 44), which is part of the pattern of retaliatory and discriminatory conduct that Plaintiff claims was based on, *inter alia*, her race. (*Id.* ¶ 47). Nonetheless, as Plaintiff does not contest this point, and as the Court denies Defendants' collateral estoppel motion on other grounds, the Court does not decide this issue here.

context of a prior litigation, include "'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.'" *Id.* (quoting *Schwartz*, 298 N.Y.S.2d at 961). "In the context of proceedings before the NYSDHR, the court considers the informality of the forum, whether or not there was a hearing allowing cross-examination of witnesses, access to discovery and, perhaps most importantly, whether plaintiff was represented by counsel or appeared *pro se*." *Skates v. Inc. Vill. of Freeport*, No. 15 Civ. 1136 (SJF) (AYS), 2016 WL 1459659, at *13 (E.D.N.Y. Jan. 28, 2016), *R&R adopted*, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016). "The determination of the preclusive effect to be afforded to decisions of New York State administrative proceedings turns on the specific facts of each case." *Id.*

Given the fact-sensitive nature of this inquiry, courts have declined to decide whether a plaintiff was afforded "a full and fair opportunity" to litigate his or her discrimination claims before the NYSDHR on a Rule 12(b)(6) motion where the record was unclear. *See, e.g.*, *Quarles v. N.Y.C. Health & Hosps.*, No. 22 Civ. 4553 (PGG) (GWG), 2023 WL 3880015, at *8 (S.D.N.Y. June 8, 2023) (holding that where it was "unclear exactly what occurred during the NYSDHR proceeding," the court did "not view the issue [of collateral estoppel] as amenable to resolution in the context of a motion to dismiss"), *R&R adopted*, 2023 WL 5321034 (S.D.N.Y. Aug. 18, 2023); *Saunders v. N.Y. Convention Ctr. Operating Corp.*, No. 20 Civ. 5805 (GHW),

2021 WL 4340793, at *13 (S.D.N.Y. Sept. 23, 2021) (denying Rule 12(b)(6) motion because court was "unable to find that Plaintiff had a full and fair opportunity to litigate before the NYSDHR" as, "[a]t this stage of litigation, the Court has only limited facts about the NYSDHR proceeding"); *Saudagar v. Walgreens Co.*, No. 18 Civ. 437 (KPF), 2019 WL 498349, at *10 (S.D.N.Y. Feb. 8, 2019) (concluding that "a lack of information about the [NYSDHR] proceeding prevents the [c]ourt from conducting the required analysis for preclusion and leads the [c]ourt to deny [d]efendants' claim for same at this stage in the litigation"); *see also Weizmann Inst. of Science v. Neschis*, 229 F. Supp. 2d 234, 248 (S.D.N.Y. 2002) (declining to decide on Rule 12(b)(6) motion whether prior arbitration had preclusive effect, as "[a]t this stage of the litigation (i.e. absent further discovery) it is inappropriate for the Court to make a determination of whether or not [p]laintiffs had a full and fair opportunity to participate in the [arbitration]").

By contrast, those courts that have granted Rule 12(b)(6) motions on this ground have tended to do so where the full NYSDHR investigation file was before the court, allowing it to properly assess the relevant factors. That includes cases cited by Defendants (*see* Reply at 8–9). *See, e.g.*, *Haygood v. Unity Health Sys.*, No. 14 Civ. 6474 (MAT), 2015 WL 3484943, at *2, *6–7 (W.D.N.Y. June 2, 2015); *Sullivan v. N.Y.C. Dep't of Investigation*, No. 12 Civ. 2564 (TPG), 2014 WL 1244666, at *3 (S.D.N.Y. Mar. 26, 2014), *vacated on other grounds*, 2014 WL 13129596 (S.D.N.Y. Apr. 9, 2014); *id.*, No. 12 Civ. 2564, Dkt. No. 31; *Johnson v. Cnty. of*

*Nassau*, 411 F. Supp. 2d 171, 177–78, (E.D.N.Y. 2006); *see also White v. City of Long Beach*, No. 22 Civ. 5628 (GRB), 2026 WL 2531943, at *2–4 (E.D.N.Y. Aug. 27, 2026).

Here, the record is devoid of a substantial amount of NYSDHR material. Accompanying their motion, Defendants submitted a copy of the "full [NYSDHR] file for Case No. 10232704," the one arising from Plaintiff's second NYSDHR complaint. (Friedfel Decl. ¶ 9 & Ex. F). However, Defendants did not submit a copy of the NYSDHR file for Plaintiff's *first* complaint (Case No. 10228226), as they "ha[d] not received a copy" in response to their FOIL request at the time they filed their brief. (Def. Br. at 3 n.4; *see* Friedfel Decl. ¶ 7). Nor did Defendants subsequently submit the file pertaining to Plaintiff's first NYSDHR complaint. The only materials pertaining to that proceeding that are before the Court are Plaintiff's complaint, the NYSDHR Determination and Order, and a notice from the EEOC sent to Calderon days after she filed the complaint. (Friedfel Decl. Exs. C & G; Reply Friedfel Decl. Ex. A).

This omission is consequential and ultimately fatal to Defendants' motion. Plaintiff's first NYSDHR complaint includes a substantial majority of the complained-of conduct set forth in the Complaint in this action. Plaintiff's first NYSDHR complaint contains allegations spanning more than a year, from July 24, 2022 through August 17, 2023 (Friedfel Decl. Ex. C at 2), whereas her second NYSDHR complaint contains only allegations between the roughly two month period from October 23, 2023 to December 19, 2023 (*id.* Ex. E at 5, 9). The second complaint did not repeat or incorporate by reference the allegations in the first

complaint. (*See id.* Ex. E). And, based on the file submitted by Defendants, the NYSDHR's investigation, the parties' submissions, and the NYSDHR's ultimate decision in the second proceeding were all confined to the conduct specifically alleged in the second complaint (*i.e.*, the incidents occurring from October to December 2023). (*Id.* Ex. F at 63–66, 160–66, 174–82 & Ex. G).

Without access to the file or other sources of information relating to the first NYSDRH complaint, the Court cannot properly assess the relevant factors outlined in *Kosakow* and other cases as they bear on whether Plaintiff had a full and fair opportunity to litigate the allegations she made in that complaint. For example, courts have found that representation by counsel weighs in favor of collateral estoppel, *Johnson*, 411 F. Supp. 2d at 182, whereas they have found it a "significant" consideration against full and fair litigation where a plaintiff "was *pro se* before the [NY]SDHR," *Ramirez v. NYP Holdings, Inc.*, No. 18 Civ. 12058 (KPF), 2020 WL 470011, at *6 (S.D.N.Y. Jan. 29, 2020). In arguing for collateral estoppel, Defendants highlight that "Plaintiff was represented by counsel in Case No. 10232704," *i.e.*, the second proceeding, and that "her counsel submitted a rebuttal addressing each of Defendants' arguments" in that proceeding. (Reply at 9; *see* Def. Br. at 14). But the Court cannot discern whether and to what extent counsel participated in the first proceeding. It does not know if counsel submitted a rebuttal statement, sought to introduce any evidence on Calderon's behalf, or participated in any way in that proceeding.

Understanding the role played by counsel here is even more important because it appears Calderon filed both of her NYSDHR complaints *pro se*. (*See* Friedfel Ex. B at 3–8 & Ex. E at 6–13). "[C]ourts recognize the critical and often determinative question is whether *the choice to file the claim* with the NYSDHR was 'freely and clearly made with the advice of counsel.'" *Skates*, 2016 WL 1459659, at *14 (emphasis added) (quoting *Johnson,* 411 F. Supp. 2d at 181–82 (where the court noted that the plaintiff was "represented by present counsel throughout [the] entirety" of the NYSDRH proceeding)); *see also White*, 2026 WL 2531943, at *3 (critical question is "whether the plaintiff was advised by counsel *before filing a complaint* with the NYSDHR") (emphasis added). The record here does not speak to whether Calderon had the benefit of counsel's advice before filing her first NYSDHR complaint, or (for that matter) her second NYSDHR complaint.

Similarly, although the file for the second proceeding includes materials from the NYSDHR's investigator (Friedfel Decl. Ex. F at 174–88), which shows, *inter alia*, that he interviewed a witness (another fact touted by Defendants, *see* Reply at 9), the record is devoid of information as to the nature or scope of the investigation for the first proceeding. It is unknown whether the investigator spoke with any witnesses, or Calderon herself, or what other evidence was sought or collected. Nor does the record show if there was any discovery, or hearing, or fact-finding conference, or what opportunity Calderon was given to cross-examine witnesses or develop the record. These are all factors that are relevant to the analysis, even if individually non-dispositive. *See, e.g.*, *Kosakow*, 274 F.3d at 734–35; *Skates*, 2016

WL 1459659, at *13; *Haygood*, 2015 WL 3484943, at *7; *see also Quarles*, 2023 WL 3880015, at *7 ("In general, courts have tended to deny preclusion where an administrative proceeding has not afforded a plaintiff the ability to develop the record fully themselves, to engage in discovery, and especially to present and confront witnesses, and where the plaintiff has explained how these faults impacted their ability to litigate fully and fairly.").

Lastly, the Court cannot disregard (although the parties' briefs do not discuss) the impact of the allegations in Calderon's Complaint of conduct occurring in 2024 and early 2025, after the filing of *both* her NYSDHR complaints. These include specific allegations of racial discrimination. (*See* Compl. ¶¶ 43–44; note 13, *supra*). Whether "new evidence became available to [plaintiff] after her [NYS]DHR complaint was dismissed" is another relevant factor in the collateral estoppel inquiry. *See Kosakow*, 274 F.3d at 734. It is unclear whether the new facts alleged in the Complaint were available to Calderon before her NYSDHR complaints were dismissed. Even though the events themselves took place after her complaints were filed, the complaints were not dismissed until July 2025, after the events occurred. But whether Calderon had the ability or opportunity to submit evidence about them as part of the NYSDHR proceedings is also not addressed by the current record.

All told, including her allegations following the filing of the second complaint, Calderon alleges conduct underlying her Section 1981 claim from July 24, 2022 to February 10, 2025. The NYSDHR investigative file for the second complaint, which forms much of the basis for Defendants' collateral estoppel argument, addresses less

than two months of this nearly three-year span. Yet Defendants ask the Court to dismiss Calderon's entire Section 1981 claim on preclusion grounds. Defendants have cited no case, in this context or otherwise, that would allow the Court to do so on so sparse of a record.

In short, while Defendants argue that "[t]he facts in this instant case weigh in favor of the application of collateral estoppel" (Reply at 9), the Court cannot reliably determine at this stage of the litigation what those "facts" are. The Court thus concludes that, as in other cases where the record was limited and unclear on the issue of whether the plaintiff had a full and fair opportunity to litigate her claims before the NYSDHR, it would be premature to decide that issue on a Rule 12(b)(6) motion. See *Quarles*, 2023 WL 3880015, at *8; *Saunders*, 2021 WL 4340793, at *13; *Saudagar*, 2019 WL 498349, at *10.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1981 claims on grounds of *res judicata* and collateral estoppel grounds is denied.

**D. Individual Liability**

Finally, Defendants argue that Plaintiff's Title VII, ADA, and ADEA claims against Duong should be dismissed as those statutes do not allow for findings of individual liability. (Def. Br. at 11 n.8). Calderon effectively concedes that this is the case (Pl. Br. at 14–15), as she must. *See Cayemittes v. City of New York Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 62 (2d Cir. 2016) ("Title VII does not provide for individual liability."); *Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir. 2024) (confirming in precedential opinion that "[t]here is no individual liability under [the

ADA]" (citation omitted)); *Cherry v. Toussaint*, 50 F. App'x 476, 477 (2d Cir. 2002) (noting that "the ADEA precludes individual liability"). Accordingly, Plaintiff's Title VII, ADA, and ADEA claims are dismissed as against Duong.

Courts may find individual liability under the NYSHRL and NYCHRL. *See Feingold v. New York*, 366 F.3d 138, 157–59 (2d Cir. 2004) (affirming individual defendants may be personally liable under the NYSHRL and NYCHRL). And Defendants do not argue that these claims should be dismissed as to Duong except where barred by the election of remedies doctrine. (Def. Br. at 11). Accordingly, as outlined above, Plaintiff's NYSHRL and NYCHRL claims against Duong must be dismissed to the extent they are based on allegations of conduct occurring prior to December 29, 2023, but not otherwise.

Section 1981 also allows for individual liability. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (holding that individuals may be held liable under Section 1981). Inasmuch as the Court has rejected Defendants' argument to dismiss the Section 1981 claims on collateral estoppel grounds, this claim survives as against both Columbia and Duong.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claims under Title VII and the ADA are dismissed without prejudice as to both Defendants. Plaintiff's claims under the ADEA are dismissed as to Defendant Duong, but not as to Defendant Columbia. Plaintiff's claims under the NYSHRL and NYCHRL are dismissed as to both

Defendants to the extent they are based on allegations of conduct occurring prior to December 29, 2023, but not otherwise. Finally, Plaintiff's claim under Section 1981 survives as to both Defendants. By no later than October 14, 2026, Plaintiff shall file a letter informing the Court whether she wishes to submit an amended complaint. Defendants' obligation to answer the Complaint is stayed pending receipt of Plaintiff's letter.

**SO ORDERED.**

DATED: New York, New York
September 29, 2026

The Honorable Gary Stein
United States Magistrate Judge